UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHERINE DANIELA PACHECO QUIROS, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Civil Action No. 21-2433 (CKK) |
| MOLLY AMADOR, *Deputy Consul General and Visa Unit Chief, U.S. Embassy in Costa Rica*, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO SEVER AND
MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... iii

Background ......................................................................................................... 2

     I.     Plaintiffs' Applications ........................................................................ 2

          A.     Plaintiff K. Quiros ...................................................................... 2

          B.     Plaintiffs E. Rivero, C. Villanueva, E. Cartaya, and D. Cartaya ............... 3

          C.     Plaintiff G. Bichiniho .................................................................. 3

          D.     Plaintiff G. Karimova .................................................................. 4

          E.     Plaintiffs P. Plentz, G. Compoy, and P. Campoy ....................... 4

          F.     Plaintiffs J. Leonardo, K. Sanchez, T. Sierra, and B. Sierra ...................... 4

          G.     Plaintiffs M. Bassanini, E. Traverso, and J. Serrano ................................. 5

          H.     Plaintiffs A. Rivero, M. Francheschi, N. Sierra, A. Sierra, and E. Cartaya 5

     II.     Visa Services in the Foreign Jurisdictions ............................................ 6

Legal Standards.................................................................................................. 7

Argument ........................................................................................................... 8

     I.     Some of Plaintiffs' Claims Are Untenable Due to the Consular Non-Reviewability Doctrine.......................................................................................... 8

     II.     In Those Instances Where Plaintiffs Failed to Submit a Timely Immigration Application, There is No Action for a Consular Officer to Take or For this Court to Compel.................................................................................... 12

     III.     On the Merits, the Delay Here Is Not Unreasonable. ........................... 13

          A.     *TRAC* Factors 1 and 2 ........................................................... 16

          B.     *TRAC* Factor 4....................................................................... 18

          C.     *TRAC* Factors 3 and 5 ........................................................... 20

          D.     *TRAC* Factor 6....................................................................... 21

IV.     To the Extent That Any Claims Survive the Motion To Dismiss, All Remaining
        Claims Should Be Severed.................................................................................. 22

Conclusion ......................................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Abdo v. Tillerson*, ,
   Civ. A. No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ........................................... 10

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 8

*Baan Rao Thai Restaurant v. Pompeo*,
   985 F.3d 1020 (D.C. Cir. 2021) ............................................................................... 9, 10, 11, 12

*Bagherian v. Pompeo*,
   442 F. Supp. 3d 87 (D.D.C. 2020) ......................................................................................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 8

*Cannon v. District of Columbia*,
   717 F.3d 200 (D.C. Cir. 2013) ................................................................................................. 2

*Dallas Safari Club v. Bernhardt*, ,
   Civ. A. No. 19-3696 (APM), 2021 WL 495078 (D.D.C. Feb. 9, 2021) ................................... 22

*Dastagir v. Blinken*, ,
   Civ. A. No. 20-02286 (TNM), 2021 WL 2894645 (D.D.C. July 9, 2021) ............. 14, 16, 18, 21

*Davidson v. District of Columbia*,
   736 F. Supp. 2d 115 (D.D.C.2010) ......................................................................................... 23

*Didban v. Pompeo*,
   435 F. Supp. 3d 168 (D.D.C. 2020) ......................................................................................... 17

*Disparte v. Corp. Exec. Bd.*,
   223 F.R.D. 7 (D.D.C. 2004) .................................................................................................... 23

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ....................................................................................... 3, 4, 5, 6, 7

*El Centro Reg'l Med. Ctr. v. Blinken*,
   Civ. A. No. 21-0361, 2021 WL 3141205 (S.D. Cal. July 26, 2021) ....................................... 15

*Ghadami v. Dep't of Homeland Sec.*,
   Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376 (D.D.C. Mar. 19, 2020) ......................... 16, 19

*Gong v. Duke,*
   282 F. Supp. 3d 566 (E.D.N.Y. 2017) ................................................................ 20

*Herbert v. Nat'l Acad. of Scis.,*
   974 F.2d 192 (D.C. Cir. 1992) ......................................................................... 8

*Hispanic Affairs Project v. Perez,*
   206 F. Supp. 3d 348 (D.D.C. 2016) .................................................................. 22

*In re Barr Labs.,*
   930 F.2d 72 (D.C. Cir. 1991) .................................................................... 19, 20

*In re Bluewater Network,*
   234 F.3d 1305 (D.C. Cir. 2000) ................................................................. 14, 17

*In re Core Commc'ns, Inc.,*
   531 F.3d 849 (D.C. Cir. 2008) ................................................................. 14, 17

*In re United Mine Workers of Am. Int'l Union,*
   190 F.3d 545 (D.C. Cir. 1999) ...................................................................... 14

*J.M.A. v. Sessions,*
   319 F. Supp. 3d 290 (D.D.C. 2018) ............................................................. 22, 23

*Kangarloo v. Pompeo,*
   Civ. A. No. 20-0354 (CJN), 2020 WL 4569341 (D.D.C. Aug. 7, 2020) ............................ 1, 11

*Liberty Fund v. Chao,*
   394 F. Supp. 2d 105 (D.D.C. 2005) ......................................................... 19, 20, 24

*Liu v. Blinken, ,*
   Civ. A. No. 21-0629 (TJK), 2021 WL 2514692 (D.D.C. June 18, 2021) ................... 15, 16, 21

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................................ 7

*M.K. v. Tenet,*
   216 F.R.D. 133 (D.D.C. 2002) ..................................................................... 23

*Markowicz v. Johnson,*
   206 F. Supp. 3d 158 (D.D.C. 2016) ................................................................. 2

*Mashpee Wampanoag Tribal Council v. Norton,*
   336 F.3d 1094 (D.C. Cir. 2003) ............................................................. 17, 18, 19

*Milligan v. Pompeo,*
   502 F. Supp. 3d 302 (D.D.C. 2020) ......................................................... 15, 16, 21

*Mohammad v. Blinken*,
  Civ. A. No. 20-3696 (TNM), 2021 WL 2866058 (D.D.C. July 8, 2021) .............. 15, 16, 18, 21

*Mosley v. Gen. Motors Corp.*,
  497 F.2d 1330 (8th Cir. 1974) ................................................................................. 23

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*,
  842 F. Supp. 2d 127 (D.D.C. 2012) ......................................................................... 22

*Nine Iraqi Allies v. Kerry*,
  168 F. Supp. 3d 268 (D.D.C. 2016) ......................................................................... 10

*Norton v. S. Utah Wild. Alliance* ("SUWA"),
  542 U.S. 55 (2004) .............................................................................................. 12, 13

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................................................... 8

*Park v. Gonzales*,
  450 F. Supp. 2d 1153 (D. Or. 2006) ........................................................................ 13

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................... 2

*Pinson v. U.S. Dep't of Justice*,
  74 F. Supp. 3d 283 (D.D.C. 2014) ........................................................................... 23

*Polyzopoulos v. Garland*,
  Civ. A. No. 20-0804 (CKK), 2021 WL 1405883 (D.D.C. Apr. 14, 2021) ........................ 11, 12

*Rice v. Sunrise Express, Inc.*,
  209 F.3d 1008 (7th Cir. 2000) ................................................................................. 23

*Sarlak v. Pompeo*,
  Civ. A.No. 20-0035 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020).............. 16, 17, 18, 19

*Shen v. Pompeo*,
  Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021).................... 15, 16, 21

*Skalka v. Kelly*,
  246 F. Supp. 3d 147 (D.D.C. 2017) ............................................................... 16, 17, 21

*Spaeth v. Mich. St. Univ. Coll. of Law*,
  845 F. Supp. 2d 48 (D.D.C. 2012) ..................................................................... 22, 23

*Tate v. Pompeo*,
  513 F. Supp. 3d 132, 2021 WL 148394 (D.D.C. Jan. 16, 2021) ........................... 15, 17, 18, 21

*Telecommunications Research & Action Center ("TRAC") v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) .......................................................................... 1, 2, 14, 22

*Thomas v. Principi,*
  394 F.3d 970 (D.C. Cir. 2005) ............................................................................. 7

*United States ex rel. Knauff v. Shaughnessy,*
  338 U.S. 537 (1950) ............................................................................................ 9

*Varol v. Radel,*
  420 F. Supp. 3d 1089 (S.D. Cal. 2019) .............................................................. 20

*W. Org. of Res. Councils v. Zinke,*
  892 F.3d 1234 (D.C. Cir. 2018) .......................................................................... 13

*Wan Shih Hsieh v. Kiley,*
  569 F.2d 1179 (2d Cir. 1978) .............................................................................. 9

*Wilson v. Wolf,*
  Civ. A. No. 20-0100 (ABJ), 2021 WL 230136 (D.D.C. Jan. 22, 2021) .............. 3

*Xu v. Cissna,*
  434 F. Supp. 3d 43 (S.D.N.Y. 2020) ................................................................ 17, 19

*Yavari v. Pompeo,*
  Civ. A. No. 19-02524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ................. 17

Statutes

5 U.S.C. § 706(1) ................................................................................................... 12, 13

8 U.S.C. § 1153(g) ................................................................................................... 5, 13

28 U.S.C. § 1361 ..................................................................................................... 1

 Regulations

8 C.F.R. § 42.67 ...................................................................................................... 13

8 C.F.R. § 42.83 ...................................................................................................... 13

22 C.F.R. § 41.121(a) .............................................................................................. 11

22 C.F.R. § 42.81(a) ................................................................................................ 11

Other Authorities

*Federal Practice and Procedure* § 1689 ................................................................ 22

By and through their undersigned counsel, Defendants—certain agencies and officials of the United States responsible for administering the Nation's immigration laws and programs—respectfully move to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) or, in the alternative, to sever Plaintiffs' claims under Rule 21.

In short, Plaintiffs seek to compel the Government to act on various visa applications claiming unreasonable delay.[1]  In some of these cases, the consular officers have already refused the visas and their decisions are immune from review under the consular non-reviewability doctrine as the D.C. Circuit has recently reiterated.  In other cases, the Plaintiffs failed to timely apply for an immigrant visa once they were notified that such visas were available, meaning there is nothing for any consular officer to act upon.  Moreover, the consular officers' pace of adjudicating or re-adjudicating the visa applications at issue is not unreasonable as a matter of law under the factors identified in *Telecommunications Research & Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984), including in light of the global COVID-19 pandemic.  Therefore, the Court should dismiss the claims in this case without prejudice.  To the extent that any claims are not dismissed, they should be severed because each of the applications at issue in this case present unique circumstances and therefore the claims are not properly joined together in a single civil action.[2]

---

[1]     In seeking to compel action, Plaintiffs bring both a claim under the Administrative Procedure Act ("APA") and a mandamus claim under 28 U.S.C. § 1361.  *See* Compl.  As the two claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020), Defendants address them together herein.  Indeed, "[b]ecause Plaintiff[s'] APA claim fails, mandamus is not available." *Id.*

[2]     Pursuant to Local Civil Rule 7(m), undersigned counsel has conferred with counsel for Plaintiffs as to this alternative relief and counsel for Plaintiffs indicates that Plaintiffs do not consent.

## BACKGROUND

Through this action, Plaintiffs seek to compel the Government to decide their various requests for immigrant visas. *See generally* Compl. Plaintiffs contend that they submitted applications to five different U.S. embassies or consulates between March 6 and October 29, 2019. Compl. ¶¶ 5-12. Specifically, they claim that their requests for visas are pending at (1) the U.S. Embassy in San Jose, Costa Rica, (2) the U.S. Embassy in Bogota, Columbia, (3) the U.S. Consulate General in Rio De Janiero, Brazil, (4) the U.S. Embassy in Tbilisi, Georgia, and (5) the U.S. Consulate General in Guayaquil, Ecuador (collectively, the "Foreign Jurisdictions"). *See id.* As described in greater detail below, these visa requests are at different stages or in different postures.

I.   **Plaintiffs' Applications**

A.   **Plaintiff K. Quiros**

Katherine Daniela Pachecho Quiros alleges that her "application for an immigrant visa, NVC Case Number SNJ2019564002, has been pending . . . at the U.S. Embassy in Costa Rica since on or before March 6, 2019." Compl. ¶ 5. But public records show that after an interview, the consular officer "refused" her visa application. *See id.* (identifying State Department application number); Consular Elec. Application Ctr., Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department application number, showing application was "Refused").[3]

---

[3]   The Court may take judicial notice of information posted on official public websites of government agencies. *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (Contreras, J.) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (Contreras, J.) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))). As such, the Court can consider the websites cited herein without converting this motion into one seeking summary judgment. *See,*

**B.**     **Plaintiffs E. Rivero, C. Villanueva, E. Cartaya, and D. Cartaya**

Plaintiffs Edgar Jose Davila Rivero, Cartaya Villanueva, Edgar Davis Davila Cartaya, and Doriana Paola Davila Cartaya allege that their "applications for an immigrant visa, NVC Case Number CRS2019600002, have been pending . . . at the U.S. Embassy in Columbia since on or before April 12, 2019." Compl. ¶ 6. Using the State Department case number in the Complaint shows that Plaintiffs' visa request(s) remain at the State Department's National Visa Center ("NVC"). *See id.*; Dep't of State, Consular Electronic Application Ctr., Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using number for the case at issue reflects "At NVC"). As the State Department's websites explain, after U.S. Citizenship and Immigration Services ("USCIS") approves an immigrant visa petition, USCIS transfers the case to the NVC. *See* Immigration Visa Process, Step 2, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html. A case then goes through a series of steps while pending at the NVC—e.g., the noncitizen submits certain paperwork and pays certain fees. *See id.* Once NVC processing is complete, the noncitizen's visa interview appointment is scheduled with the relevant in-country consulate. *See* Immigration Visa Process, Step 10, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview.html.

**C.**     **Plaintiff G. Bichiniho**

Giovana Tabarjar Bichiniho alleges that her "application for an immigrant visa, NVC Case Number RDJ2019601006, has been pending . . . at the U.S. Consulate General in Rio De Janiero

---

*e.g., Wilson v. Wolf*, Civ. A. No. 20-0100 (ABJ), 2021 WL 230136, at *4 (D.D.C. Jan. 22, 2021) ("In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'") (citing, among others, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

since on or before April 12, 2019." Compl. ¶ 7.  Public records show, however, that this application

has already been "refused." *See id.* (identifying State Department application number); Consular

Elec. Application Ctr., Visa Status Check,  https://ceac.state.gov/CEACStatTracker/Status.aspx

(using State Department application number, showing application was "Refused").

### D.    Plaintiff G. Karimova

Gulshana Karimova alleges that her "application for an immigrant visa, NVC Case Number

TBL2019774003 has been pending . . . at the U.S. Embassy in Georgia since on or before October

2, 2019." Compl. ¶ 8.  Again, public records show that this application has already been "refused."

*See id.* (identifying State Department application number); Consular Elec. Application Ctr., Visa

Status Check,  https://ceac.state.gov/CEACStatTracker/Status.aspx  (using State Department

application number, showing application was "Refused").

### E.    Plaintiffs P. Plentz, G. Compoy, and P. Campoy

Plaintiffs Patricia Nogueira Plentz, Gilherme Marques Compoy, and Pietra, Palandi

Campoy allege that their "applications for an immigrant visa, NVC Case Number

RDJ2019801001, have been pending . . . at the U.S. Consulate General in Rio De Janiero since on

or before October 29, 2019." Compl. ¶ 9.  At least one of these applications has already been

"refused." *See id.* (identifying State Department application number); Consular Elec. Application

Ctr., Visa Status Check,  https://ceac.state.gov/CEACStatTracker/Status.aspx  (using State

Department application number, showing application was "Refused").

### F.    Plaintiffs J. Leonardo, K. Sanchez, T. Sierra, and B. Sierra

Plaintiffs Joya Ovalle Rafael Leonardo, Karen Margarita Sierra Sanchez, Thomas Joya

Sierra, and Brianna Joya Sierra allege that their "applications for an immigrant visa, NVC Case

Number BGT2019678018, have been pending . . . at the U.S. Embassy in Columbia since on or

before October 9, 2019." Compl. ¶ 10.  But public records show that these Plaintiffs actually failed

to make timely visa applications after they were notified that visas were available.  *See id.*
(identifying State Department application number); Consular Elec. Application Ctr., Visa Status
Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department application
number, showing applications "Expiring Soon").  8 U.S.C. § 1153(g) provides that "[t]he Secretary
of State shall terminate the registration of any alien who fails to apply for an immigrant visa within
one year following notification to the alien of the availability of such visa."   Here, the public
records show that Plaintiffs J. Leonardo, K. Sanchez, T. Sierra, and B. Sierra "were advised of this
requirement over 1 year ago," but no response was ever received from these Plaintiffs.  Compl.
¶ 10;    Consular    Elec.    Application    Ctr.,    Visa    Status    Check,
https://ceac.state.gov/CEACStatTracker/Status.aspx.  Thus, there are no applications for consular
officers to adjudicate with respect to these Plaintiffs.[4]

### G.      Plaintiffs M. Bassanini, E. Traverso, and J. Serrano

Plaintiffs Manuel Francisco Bassanini, Erika Patricia Serrano Traverso, and Jose Manuel
Bassanini Serrano allege that their "applications for an immigrant visa, NVC Case Number
GYQ2019587004, have been pending . . . at the U.S. Consulate General in Guayaquil, Ecuador
since on or before March 29, 2019."  Compl. ¶ 11.  Public records show that these applications
were "Returned to NVC."   *See* Consular Elec. Application Ctr., Visa Status Check,
https://ceac.state.gov/CEACStatTracker/Status.aspx

### H.      Plaintiffs A. Rivero, M. Francheschi, N. Sierra, A. Sierra, and E. Cartaya

Plaintiffs Alvaro Jose Davila Rivero, Mariela Carolina Sierra Francheschi, Nicole Carolina
Davila Sierra, Alvaro Santiago Jose Davila Sierra, and Emma Victoria Davila Sierra Cartaya allege

---

[4]      Their registrations may be reinstated and any petition revalidated if, within one year of the
expiration notice, they can establish that their failure to pursue their immigrant visa applications
was due to circumstances beyond their control.  *See* 8 U.S.C. § 1153(g).

that their "applications for an immigrant visa, NVC Case Number CRS2019602001, have been pending . . . at the U.S. Embassy in Columbia since on or before April 15, 2019."  Compl. ¶ 12. But public records show that these Plaintiffs failed to make timely visa applications after they were notified that visas were available.  *See id.* (identifying State Department application number); Consular       Elec.       Application       Ctr.,       Visa       Status       Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department application number, showing applications "Expiring Soon").  Thus, there are no applications for consular officers to adjudicate with respect to these Plaintiffs.

## II.    <u>Visa Services in the Foreign Jurisdictions</u>

Due to the onset of the COVID-19 global pandemic, the State Department suspended visa services in the Foreign Jurisdictions—as with all U.S. embassies and consulates around the world—in    March    2020.    *See*    Suspension    of    Routine    Visa    Servs., https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html.  Four months later, in July 2020, U.S. embassies and consulates began a phased resumption of routine visa services.  *See id.*  Currently, visa services are being offered on a post-by-post basis, consistent with State Department guidance for safely returning our Nation's consular officials and diplomats to work based on COVID-19 conditions where each post is located.  *See* Visa       Services       Operating       Update,       https://travel.state. gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html.

COVID-19 has significantly disrupted the State Department's ability to interview applicants and issue visas on a worldwide basis.  For example, due to the continuing worldwide effects of COVID-19, the total number of immigrant visas issued by posts worldwide in January 2021    was    just    11,880.    *See*    Immigrant    Visa    Issuances    by    Post,    Jan.    2021, https://travel.state.gov/content/dam/visas/Statistics/Immigrant-Statistics/MonthlyIV

Issuances/JANUARY%202021%20-%20IV%20Issuances%20by%20Post%20and%20Visa%20
Class.pdf.  By comparison, in January 2020, before the full onset of the pandemic, Sate Department

posts issued 43,136 visas.  *See* Immigrant Visa Issuances by Post, Jan. 2020, https://travel.

state.gov/content/dam/visas/Statistics/Immigrant-Statistics/MonthlyIVIssuances/JANUARY%

202020%20-%20IV%20Issuances%20by%20Post%20and%20Visa%20Class.pdf.[5]   COVID-19

restrictions on State Department posts worldwide has also predictably limited the ability of posts

to schedule visa interviews and led to a backlog of cases that remain at the NVC.  *See, e.g.,* Update

on U.S. Immigrant Visa Processing (Mar. 9, 2021), https://www.state.gov/briefings-foreign-press-

centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/     (noting that

approximately 75,000 immigrant visa cases were pending at the NVC in January 2020, compared

to 473,000 pending as of February 2021).  Despite the challenges imposed by COVID-19, the State

Department has publicly committed "to resolve backlogs and process visas as quickly and

efficiently as [it] can while remaining committed to the national security of the United States."  *Id.*

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a

preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A

court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations

in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all

inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137,

1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court

---

[5]     *See also* Report of the Visa Office 2020, Table I, https://travel.state.gov/content/dam/
visas/Statistics/AnnualReports/FY2020AnnualReport/FY20AnnualReport_TableI.pdf  (reporting
that in FY2020, Oct. 2019 to Sept. 2020, the Department issued 240,526 immigrant visas
worldwide as compared to 462,422 during FY2019 due to the effects of COVID-19).

may examine materials outside the pleadings as it deems appropriate to resolve the question of its

jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a

claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to

Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as

true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S.

at 678. However, a court is not required to accept conclusory allegations or unwarranted factual

deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal

conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient

factual allegations to support a plaintiff's claims for relief.

## **ARGUMENT**

### I.    **Some of Plaintiffs' Claims Are Untenable Due to the Consular Non-Reviewability Doctrine.**

Several of the visa applications at issue in this case have already been refused and therefore

the doctrine of consular non-reviewability bars claims based on those applications. *See* Compl.

¶¶ 5, 7-9 (identifying State Department application number); Consular Elec. Application Ctr., Visa

Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department

application numbers, showing applications "Refused"). As the D.C. Circuit recently reaffirmed,

"[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from

judicial review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024 (emphasis added) (citing *Saavedra Bruno*, 197 F.3d at 1159).  This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (internal alterations, quotation marks, and citation omitted); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

In *Baan Rao*, the D.C. Circuit went on to note that there are only "two narrow circumstances" where the doctrine does not apply: (1) where an U.S. citizen challenges the exclusion of a noncitizen if it burdens the citizen's constitutional rights; and (2) where Congress says otherwise. *Id.* (collecting citations).  Notably, the Circuit did not include an exception for the claims brought here—a suit seeking to compel a further decision on a visa application that has already been refused.  Although styled as a suit seeking mandamus, in those instances where Plaintiffs' applications have been refused, Plaintiffs are essentially asking the Court to decide whether the consular officer can continue to withhold the visa based on the officer's initial refusal or must make another decision to issue or withhold the visa.  No reading of *Baan Rao* and the D.C. Circuit's precedents permits such a claim seeking review of the merits or duration of a consular officer's withholding of a visa.

Indeed, by confining the exceptions to the doctrine and noting that doctrine prevents review of decisions to "withhold" visas, the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Circuit's clear and recent guidance, Plaintiffs' complaint fails to state a claim for relief in connection with any visa application that has previously been refused. *Baan Rao*, 985 F.3d at 1027-29 (consular non-reviewability is a merits disposition properly brought under Rule 12(b)(6)).

While Plaintiffs will undoubtedly cite a lengthy list of non-controlling decisions from this District that pre-date *Baan Rao* and found jurisdiction to compel consular action, nearly all are distinguishable from the circumstances presented here. For example, in *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 298 (D.D.C. 2016), Judge Kessler found the doctrine did not bar plaintiffs' claims. But in that suit, the Court found that the INA provided a particular adjudicatory timetable for the specific applications at issue (i.e., special immigrant visas of Iraqis who provided direct support for the United States' military efforts in Iraq) and that denials of those applications were subject to specific congressional reporting obligations. *Id.* at 281. The Court concluded it was this specific timetable and these specific provisions that guided its decision. *See id.* at 289 (noting that the government cannot both avoid congressional reporting for denied applications and claim consular non-reviewability for unreported denials); *id.* at 294 ("Congress has provided a clear nine-month timeline for the adjudication of [special immigrant visa] applications.").

Here, Plaintiffs do not allege that they are seeking any special immigrant visas, and the State Department's website lists the status of the applications as "refused" not in "administrative processing."  While additional processing might cause a consular officer to revisit or reconsider that refusal, a decision contemplated by the State Department's regulations has most certainly been made.  *See* 22 C.F.R. § 42.81(a) (noting that once an immigrant visa application is properly presented, the consular officer must issue the visa, refuse the visa, or discontinue granting the visa); 22 C.F.R. § 41.121(a) (same for non-immigrant visas).  And the consular officer's decision to withhold a visa based on that refusal is not reviewable.  *Baan Rao*, 985 F.3d at 1024-25 (doctrine bars review of decisions to "issue *or withhold* a visa").  Applying these precedents, this Court recently held that the consular non-reviewability doctrine precludes a court from compelling a consular officer to issue a decision after the officer has refused a visa.  *See Polyzopoulos v. Garland*, Civ. A. No. 20-0804 (CKK), 2021 WL 1405883, at *6 (D.D.C. Apr. 14, 2021) ("a consular officer *already rendered* a decision on the merits of [the noncitizen's] visa application, refusing the application . . . The fact that [the noncitizen has] requested reconsideration of that decision, does not alter the fact that Plaintiffs are now challenging the substantive result of the consular officer's decision to refuse [the noncitizen's] visa application.  Such a challenge to the merits of a final consular visa decision remains subject to the consular non-reviewability doctrine, which precludes judicial review.") (emphasis in original; internal citations omitted).

The remaining authorities that have suggested the doctrine does not bar a suit to compel action also largely arose in different circumstances, namely applications for waivers under President Trump's Proclamation 9645, which imposed a waiver process for noncitizens from certain countries.  *See, e.g., Kangarloo*, 2020 WL 4569341, at *3 (collecting cases).  But President Biden has rescinded Proclamation 9645 (*see* Proclamation on Ending Discriminatory Bands on

Entry to the United States (Jan. 20, 2021)), and thus, those waiver cases are plainly no longer at issue or germane to this action.  Indeed, in ruling that the doctrine did not bar suits to compel consular officials to make waiver decisions, judges often distinguished those suits from ones seeking to compel further adjudication after a "refusal."  *Id.* at *3 ("the consular nonreviewability doctrine does not apply to the waiver process so long as the government has not made a final decision whether to grant or deny the waiver, even if the doctrine bars review of the original refusal").

At bottom, the D.C. Circuit has now reemphasized that the consular non-reviewability doctrine applies to decisions to "issue *or withhold* a visa" except in two very limited circumstances *Baan Rao*, 985 F.3d at 1024-25 (emphasis added).  Here, by refusing visa applications and continuing to withhold the issuance of visas based on that refusal, the consular officers' actions fall squarely into the doctrine as recognized by the D.C. Circuit.  Therefore, even had district court decisions in this Circuit previously held the doctrine could be used to compel action on an application after an initial refusal in the circumstances presented here, those decisions are now inconsistent with D.C. Circuit precedent and cannot provide a basis for Plaintiffs' claims.

## II.    In Those Instances Where Plaintiffs Failed to Submit a Timely Immigration Application, There is No Action for a Consular Officer to Take or For this Court to Compel.

Under APA § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  But a court may only compel an agency to take a "[1] discrete agency action that [2] it is required to take."  *Norton v. S. Utah Wild. Alliance* ("SUWA"), 542 U.S. 55, 63 (2004).  These two limitations play different roles: "The limitation to discrete agency action precludes . . . broad programmatic attack[s,]" while "[t]he limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law."  *Id.* at 64-65 (emphasis omitted).  Thus, "the only agency action that can be compelled under

the APA is action legally required." *Id.* at 63.  Such a "legal duty must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'" *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (quoting *SUWA* 542 U.S. at 63–64).

Here, several Plaintiffs failed to submit timely immigration visa applications, which resulted in their immigration registrations being terminated and any immigration petition previously approved by U.S. Citizenship and Immigration Services being automatically revoked.[6] *See* Compl. ¶¶ 10, 12 (identifying State Department application number); Consular Elec. Application Ctr., Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department application numbers, showing applications "Expiring Soon").  Under these circumstances, there is nothing left for any consular official to do.  Because Plaintiffs are therefore unable to point to any discrete agency action that the State Department is required to take, mandamus claims based on these applications must necessarily fail.

## III.     On the Merits, the Delay Here Is Not Unreasonable.

Even were the Court to overlook the other defects in Plaintiffs' Complaint, Plaintiffs have still failed to state a claim because any delays here are not unreasonable as a matter of law.  When a plaintiff seeks a writ of mandamus to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a court "starts from the premise that issuance of the

---

[6]     Under 8 U.S.C. § 1153(g), the Secretary of State has the authority to estimate the number of anticipated visas and is required to "terminate the registration of any alien who fails to apply for an immigrant visa within one year following notification to the alien of the availability of such visa." 8 U.S.C. § 1153(g); *see also* 8 C.F.R. § 42.83 ("[A]n alien's registration for an immigrant visa shall be terminated if, within one year after transmission of a notification of the availability of an immigrant visa, the applicant fails to apply for an immigrant visa."). An alien is deemed "registered" for purposes of § 1153(g) when the alien files Form DS-230 or Form DS-260, or when the State Department notifies the alien "of the availability of an immigrant visa, whichever occurs first." 8 C.F.R. § 42.67; *Park v. Gonzales*, 450 F. Supp. 2d 1153, 1157 (D. Or. 2006).

writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

(1)     the time agencies take to make decisions must be governed by a rule of reason;

(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted). Applying these factors here makes clear that any delays are not unreasonable.

Indeed, there is a growing unanimous chorus of decisions in this District holding that suits such as this, which seek to compel State Department action on visa requests delayed due to processing limitations (including those caused by the pandemic), fail under the *TRAC* factors. *See, e.g.*, *Dastagir v. Blinken*, Civ. A. No. 20-02286 (TNM), 2021 WL 2894645, at *5 (D.D.C. July 9, 2021) (dismissing immigration mandamus suit under *TRAC*, "[t]he Court does not doubt that the

waiting time has impacted [plaintiff] and her family. But 'delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities.' And [plaintiff] offers no basis for judicial line-cutting those also waiting their turn") (citation omitted); *Mohammad v. Blinken*, Civ. A. No. 20-3696 (TNM), 2021 WL 2866058, at *4 (D.D.C. July 8, 2021) (same); *Shen v. Pompeo*, Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025, at *7-9 (D.D.C. Mar. 24, 2021) (dismissing immigration mandamus suit under *TRAC*); *Liu v. Blinken*, Civ. A. No. 21-0629 (TJK), 2021 WL 2514692, at *7 (D.D.C. June 18, 2021) (denying motion for provisional relief in immigration mandamus suit, "Defendants, not this Court, are best positioned to understand the continued effect of the pandemic on their operations, the entire backlog of visa applications, the competing demands on involved personnel, and even how (if at all) to account for the impending deadline [for certain visas]. Thus, Defendants, not this Court, know best how to allocate their resources and prioritize the processing of visa applications."); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 2021 WL 148394, at *9-12 (D.D.C. Jan. 16, 2021) (Howell, C.J.) (denying motion for provisional relief in immigration mandamus suit, "defendants face challenges in determining how to best deploy scarce resources. Balancing the relevant factors, 'the government's interests in balancing its own priorities' and determining how to allocate scarce resources in a global pandemic outweigh plaintiffs' interests in immediate adjudication of their visas"); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316-20 (D.D.C. 2020) (Boasberg, J.) (same).  And this District is not alone in recently reaching these conclusions.  *See, e.g., El Centro Reg'l Med. Ctr. v. Blinken*, Civ. A. No. 21-0361, 2021 WL 3141205, at *4 (S.D. Cal. July 26, 2021) (applying *TRAC* finding that visa application refused at post was not unreasonably delayed; dismissing case under Rule 12(b)(6)).

A.   *TRAC* **Factors 1 and 2**

The first and second *TRAC* factors weigh in Defendants' favor.  *See Dastagir*, 2021 WL 2894645, at *3-5; *Mohammad*, 2021 WL 2866058, at *3-4; *Liu*, 2021 WL 2514692, at *6; *Shen*, 2021 WL 1246025, at *8; *Milligan*, 502 F. Supp. 3d at 318-19.  These factors ask whether the length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress.  *Id.*  There is no statutory or regulatory timeframe within which the State Department or a consular officer must adjudicate or re-adjudicate visa applications.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (Leon, J.) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").  Because Congress has established no firm timetable for consular officials to adjudicate or re-adjudicate the visa applications at issue here, the Court must determine whether the applications have been pending for an unreasonable amount of time as established by case law.  *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable.).

Here, the case law fails to support Plaintiffs' claim of unreasonable delay.  Indeed, courts in this District and elsewhere have routinely concluded that delays for immigration benefits longer than the delay here do not constitute unreasonable delay.  *See Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (Bates, J.) (finding that "the roughly twenty-five-month delay to this point in adjudicating [plaintiff's] waiver eligibility is not

unreasonable"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (Cooper, J.) (holding that the plaintiffs had "failed to establish that the two-year delay in processing [a] waiver application is unreasonable"); *Skalka*, 246 F. Supp. 3d at 153-54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable); *Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding a three-year delay in adjudicating an asylum application to not be unreasonable under the APA); *Yavari v. Pompeo*, Civ. A. No. 19-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). Using this "case law as a guide," these initial *TRAC* factors weigh in Defendants' favor. *See Sarlak*, 2020 WL 3082018, at *6.

Moreover, a review of the factual circumstances surrounding the consular officers' handling of the visa applications confirms that there has been no "transparent violation[ ] of a clear duty to act[,]" *Bluewater Network*, 234 F.3d at 1315, or delay "so egregious as to warrant mandamus[,]" *Core Commc'ns, Inc.*, 531 F.3d at 855. Indeed, "[w]ether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate v. Pompeo*, Civ. A. No. 20-3249 (BAH), 2021 WL 148394, at *10 (D.D.C. Jan. 16, 2021) (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). As in *Tate*, "the delay in processing plaintiffs' visa applications is a function of 'the Secretary of State's decision to reduce consular processing [in order to] protect the health of consular officers and the public' in light of the COVID-19 pandemic." *Id.* at *11 (quoting agency declaration).

Far from egregious, any delays here are due to reasonable and prudent measures to protect safety and health.  As such, the first two *TRAC* factors weigh in the State Department's favor. *Dastagir*, 2021 WL 2894645, at *5 (finding first two *TRAC* factors favored the agency in a nearly identical suit seeking to compel the re-adjudication of a visa application pending at post, "Issues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess. These circumstances offer sufficient 'rhyme [and] reason' to explain the Government's response time."); *Mohammad*, 2021 WL 2866058, at *4 (reaching same holding, rejecting plaintiff's attempt to point to USCIS aspirational processing time estimate, noting plaintiff "cannot make apple juice with oranges. The State Department, not USCIS, will handle the visa application.  So its processing estimates are not the appropriate yardstick with which to measure the work of the State Department, a separate agency.").

**B.**    ***TRAC* Factor 4**

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag*, 336 F.3d at 1100, and weighs heavily in Defendants' favor as Plaintiffs ask this Court to move their applications ahead of other pending applications, *see* Compl., Prayer for Relief.  Indeed, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved."  *Tate*, 2021 WL 148394, at *11 (quoting *Sarlak*, 2020 WL 3082018, at *6).  For example, in *Tate*, the Court considered similar facts and claims, holding that this factor "conclusively favors defendants." *Id.*  Specifically, the *Tate* Court considered the agency's competing priorities, noting that the State Department currently "face[s] an extraordinary backlog of visas across the world, processing visas at less than 11 percent of normal capacity from

July 15, 2020, to September 30, 2020, and processing nonimmigrant visa applications at less than

16 percent of normal capacity in November 2020." *Id.* "Given this backlog and the continued

suspension of routine operations around the world due to the pandemic, . . . deference to the State

Department's priority-setting and prioritization of 'mission critical' functions is necessary." *Id.*

Notwithstanding these competing priorities, Plaintiffs ask the Court to move the applications here

to the front of the line and cause further delay for other applicants awaiting visa determinations.

*See* Compl., Prayer for Relief.

The holding in *Tate* is not unique.  Under this Circuit's precedent, a court will not compel

agency action where the result would be merely to expedite the consideration of a plaintiff's

application ahead of others.  *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005)

(Bates, J.) (courts will not compel agency action where result "would mean putting [plaintiff] at

the head of the queue at the expense of others"); *Mashpee Wampanoag*, 336 F.3d at 1101 ("We

agree with the Secretary that the district court erred by disregarding the importance of there being

'competing priorities' for limited resources.  The district court offered no legal justification for

precluding the Secretary from relying upon her 'first-come' procedure, and we can conjure

none."); *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and

authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate

its resources in the optimal way."); *Sarlak*, 2020 WL 3082018, at *6 (finding that the fourth factor

weighed in the government's favor because expediting the plaintiff's waiver would harm other

agency activities of equal or greater priority); *Ghadami*, 2020 WL 1308376, at *9 (finding that

"expediting review in [plaintiff's] case would merely direct government resources from the

adjudication of other waiver applications"); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55

(S.D.N.Y. 2020) ("The effect of leapfrogging Plaintiff's application to the front of the line would

do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."). Mandamus relief is inappropriate in this context. *See Liberty Fund*, 394 F. Supp. 2d at 117; *see also Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief.").

C.     *TRAC* Factors 3 and 5

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund*, 394 F. Supp. 2d at 118. These factors also weigh in Defendants' favor. Here, the Complaint contains no allegations whatsoever demonstrating that purported delays have resulted in any impact on the interests relevant to these factors. *See generally* Compl.

Furthermore, advancing the applications here to the front of the queue would simply benefit Plaintiffs to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay. Indeed, expediting review in this case over the applications of other noncitizens would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the State Department's prioritization decisions and place Plaintiffs at the front of the line. *See Barr Labs*, 930 F.2d at 75-76 (observing that "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain[,]" and that agencies are in the best position to

allocate their own resources); *Skalka*, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response").

Moreover, through Plaintiff's claims, Plaintiffs ask this Court to second guess or find fault in determinations that the State Department or U.S. officials in the Foreign Jurisdiction have made about the health and welfare of the State Department's workforce during the global pandemic. Unquestionably, measures implemented to prevent the spread of COVID-19 and protect the safety of U.S. officials—and visa applicants—abroad contributed to any delays in the adjudication or re-adjudication of the applications here.  The Court is ill-equipped to adjudge the appropriateness or necessity of COVID-19 restrictions or limitations that Government officials took, or are now taking, to ensure that the Nation's consular and diplomatic officials remain safe and healthy in these uncertain times.  The Court should defer to the State Department's determinations about the health and welfare of its employees and conclude that these factors weigh in Defendants' favor. *See Dastagir*, 2021 WL 2894645, at *6; *Mohammad*, 2021 WL 2866058, at *6; *Liu*, 2021 WL 2514692, at *6; *Shen*, 2021 WL 1246025, at *8; *Tate*, 2021 WL 148394, at *11; *Milligan*, 502 F. Supp. 3d at 319.

**D.**     ***TRAC* Factor 6**

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80.  In the Complaint, Plaintiffs do not allege bad faith on the part of the State

Department.  *See generally* Compl.[7]  Thus this factor does not favor Plaintiffs.

## IV.    To the Extent That Any Claims Survive the Motion To Dismiss, All Remaining Claims Should Be Severed.

To the extent any survive, the Court should sever Plaintiffs' individual claims, each of

which turns on their own unique facts and circumstances.  As explained above, this is a mandamus

action brought by 23 individual Plaintiffs who seek to compel the adjudication of various

immigrant visa applications that they allegedly submitted to five U.S. Embassies or Consulates

around the world between March 6 and October 29, 2019.  Each of the applications and each of

the Plaintiffs present their own unique circumstances and therefore Plaintiffs' claims are not

properly joined together in a single action and should be severed.

Federal Rule of Civil Procedure 21 provides the Court with broad discretion to "sever any

claim against a party." Fed. R. Civ. P. 21; *see also M.M.M. on behalf of J.M.A. v. Sessions*, 319 F.

Supp. 3d 290, 294 (D.D.C. 2018); *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 373

(D.D.C. 2016); *Spaeth v. Mich. St. Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 n.11 (D.D.C. 2012);

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*

---

[7]     Lastly, although Plaintiffs bring APA claims, the basis for Plaintiffs' challenge is not final agency action, but rather agency inaction.  Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply.  *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, Civ. A. No. 19-3696 (APM), 2021 WL 495078, at *3 (D.D.C. Feb. 9, 2021) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment).  Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the visa application.  *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC,* 750 F.2d at 79).

§ 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum . . . ."). If a claim is severed, the severed claim will proceed as a separate and independent cause of action and will result in a separate judgment. *M.M.M.*, 319 F. Supp. 3d at 294; *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 288 n.7 (D.D.C. 2014); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000) ("Under Rule 21 . . . severance creates two separate actions where previously there was but one.").

"In determining whether to join or sever claims, courts employ the permissive joinder requirements articulated in Rule 20(a), which permits claims to be joined if: 1) the claims arise from the same transaction or occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all plaintiffs arose in the action." *Pinson*, 74 F. Supp. 3d at 288 (citing Fed. R. Civ. P. 20(a)). "The determination of a motion to sever is within the discretion of the trial court." *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) (citation omitted).  Under Rule 20(a), to satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related. *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C.2010) ("'[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'"). "The movant, however, cannot join parties 'who simply engaged in similar types of behavior . . . [but are] otherwise unrelated; some allegation of concerted action . . . is required.'" *Pinson*, 74 F. Supp. 3d at 289 (quoting *Spaeth*, 845 F. Supp. 2d at 53). The other prong of Rule 20(a) requires that "some common question of law or fact as to all of the plaintiffs' claims, [but] not that all legal and factual issues be common to all the plaintiffs." *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10–11 (D.D.C. 2004) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)).

Here, the Plaintiffs do not satisfy these requirements. Each of the 23 individual plaintiffs claims that different "consular officers at various U.S. embassies or consulate generals" have unreasonably delayed the adjudication of his or her immigrant visa application. *See* Am. Compl. ¶¶ 4-12.  But the similarities end there. The plaintiffs filed their applications on different dates, and therefore their applications have been pending for different periods of time. And many of the applications sit in different postures—whether the applications have already been refused, they expired, they remain at the NVC, or were returned to the NVC.  Also, plaintiffs' applications are, were, or will be handled at five different embassies or consulates around the world, each of which presents its own unique circumstances.  And some of the *TRAC* factors necessary to evaluate Plaintiffs' claims turn on circumstances that are unique to each of them—namely, the third and fifth factors, which concern any delay's "impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay."  *Liberty Fund*, 394 F. Supp. 2d at 118.  For these reasons, Plaintiffs' claims are not logically related, present different factual circumstances, and should be severed under the criteria of Rule 20(a).

*        *        *

## CONCLUSION

The desire to apply for papers necessary to travel to this country and apply for admission is obvious, and the frustration caused by delays in the process to secure those papers is understandable.  This Court's role in that process is, however, limited.  And this case—whether decided on threshold questions or the merits—falls squarely outside of that limited role. Accordingly, the Court should dismiss this action.  A proposed order is enclosed herewith.


Dated: November 29, 2021                    Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            D.C. Bar #481052
                                            Acting United States Attorney

                                            BRIAN P. HUDAK
                                            Acting Chief, Civil Division


                                            By: _____ /s/ *Derek S. Hammond* _____
                                            DEREK S. HAMMOND,
                                            D.C. BAR No. 1017784
                                            Assistant United States Attorney
                                            555 Fourth Street, NW
                                            Washington, DC 20530
                                            (202) 252-2511

                                            *Attorneys for the United States of America*