UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHERINE DANIELA PACHECO QUIROS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MOLLY AMADOR, *Deputy Consul General and Visa Unit Chief, U.S. Embassy in Costa Rica*, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 21-2433 (CKK)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO SEVER

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DEREK S. HAMMOND, D.C. Bar # 1017784
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2511
Derek.Hammond@usdoj.gov

Dated: February 10, 2023

*Attorneys for the United States of America*

## TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... iii

Background ......................................................................................................... 1

    I.      Plaintiffs' Applications ......................................................................... 1

          A.      Plaintiff Pacheco Quiros ........................................................ 1

          B.      The E. Davila Rivero Family ................................................. 3

          C.      Plaintiff Bichinho .................................................................. 3

          D.      Plaintiff Karimova ................................................................. 4

          E.      The Campoy Family ............................................................... 5

          F.      The Leonardo Family ............................................................. 6

          G.      The Bassanini Ramirez Family ............................................. 7

          H.      The A. Davila Rivero Family ................................................. 9

    II.     Plaintiffs' Claims .................................................................................. 10

Legal Standards ................................................................................................. 10

    I.      Dismissal Under Rule 12 ...................................................................... 10

    II.     Summary Judgment Under Rule 56 ....................................................... 11

Argument ........................................................................................................... 12

    I.      Counts I and II of the Amended Complaint Should Be Dismissed or, in the Alternative, the Court Should Grant Defendants Summary Judgment on Those Claims. ................................................................................................... 12

          A.      Claims Asserted by Plaintiffs Who Have Been Issued Their Sought-After Visas Are Moot. ..................................................................... 12

          B.      Claims Asserted by Plaintiffs' Who Have Had Their Visa Applications Refused Are Untenable Due to the Consular Non-Reviewability Doctrine. ................................................................................................... 13

          C.      Plaintiffs' Mandamus Claims Fail On the Merits. .................................... 17

II.     The Court Should Dismiss Counts III and IV for Failure to State A Plausible
        Claim to Relief. ................................................................................................... 24

        A.     Count III is Without Merit Because A Subdelegation to a Subordinate
               Officer Is Not Improper. ....................................................................... 25

        B.     Count IV Fails Because 8 C.F.R. § 205.1(a) Does Not Affect Any
               Improper Delegation of Authority. ........................................................ 27

III.    To the Extent That Any Claims Survive, All Remaining Claims Should Be
        Severed. ............................................................................................................... 29

Conclusion ........................................................................................................................ 32

# **TABLE OF AUTHORITIES**

Cases

*Abdo v. Tillerson,*
   Civ. A. No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ........................................... 14

*Aboutalebi v. Dep't of State,*
   Civ. A. No. 19-2605 (TJK), 2019 WL 6894046 (D.D.C. Dec. 18, 2019) ............................... 12

*Al-Gharawy v. Dep't of Homeland Sec.,*
   Civ. A. No. 21-1521 (RDM), 2022 WL 2966333 (D.D.C. July 27, 2022).................. 14, 15, 16

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................ 10

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)............................................................................................................. 11

*Arab v. Blinken,*
   Civ. A. No. 21-1852 (BAH), 2022 WL 1184551 (D.D.C. Apr. 21, 2022) .............................. 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................................. 11

*Baan Rao Thai Rest. v. Pompeo,*
   985 F.3d 1020 (D.C. Cir. 2021) ................................................................................. 13, 14, 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................................. 11

*Cannon v. District of Columbia,*
   717 F.3d 200 (D.C. Cir. 2013) ................................................................................................. 3

*Celotex Corp. v. Catrett,*
   477 U.S. 317, (1986)............................................................................................................ 11

*Czekalski v. Peters,*
   475 F.3d 360 (D.C. Cir. 2007) ............................................................................................. 11

*Dastagir v. Blinken,*
   557 F. Supp. 3d 160 (D.D.C. 2021) .................................................................................. 18, 23

*Davidson v. District of Columbia,*
   736 F. Supp. 2d 115 (D.D.C.2010) ...................................................................................... 30

*Disparte v. Corp. Exec. Bd.,* 223 F.R.D. 7 (D.D.C. 2004) ....................................................... 30

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ............................................................................. 3

*Eljalabi v. Blinken*,
   Civ. A. No. 21-1730 (RC), 2022 WL 2752613 (D.D.C. July 14, 2022) ................................... 20

*Fleming v. Mohawk Wrecking & Lumber Co.*,
   331 U.S. 111 (1947) ............................................................................................ 26

*Ghadami v. Dep't of Homeland Sec.*,
   Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376 (D.D.C. Mar. 19, 2020), ............................. 22

*Gong v. Duke*,
   282 F. Supp. 3d 566 (E.D.N.Y. 2017) ....................................................................... 22

*Herbert v. Nat'l Acad. Of Scis.*,
   974 F.2d 192 (D.C. Cir. 1992) ............................................................................... 10

*Hispanic Affairs Project v. Perez*,
   206 F. Supp. 3d 348 (D.D.C. 2016) ......................................................................... 29

*In re Barr Labs.*,
   930 F.2d 72 (D.C. Cir. 1991) ........................................................................... 22, 24

*In re Bluewater Network*,
   234 F.3d 1305 (D.C. Cir. 2000) ............................................................................. 17

*In re Core Commc'ns, Inc.*,
   531 F.3d 849 (D.C. Cir. 2008) ............................................................................... 17

*In re United Mine Workers of Am. Int'l Union*,
   190 F.3d 545 (D.C. Cir. 1999) ............................................................................... 18

*iTech U.S., Inc. v. Renaud*,
   5 F.4th 59, (D.C. Cir. 2021) ................................................................................ 28

*J.M.A. v. Sessions*,
   319 F. Supp. 3d 290 (D.D.C. 2018) ..................................................................... 29, 30

*Kondapally v. USCIS*,
   557 F. Supp. 3d 10 (D.D.C. 2021) ........................................................................... 28

*Liberty Fund v. Chao*,
   394 F. Supp. 2d 105 (D.D.C. 2005) ................................................................. 22, 23, 31

*Liu v. Blinken*,
   544 F. Supp. 3d 1 (D.D.C. 2021) ....................................................................... 18, 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................ 10, 24

*M.K. v. Tenet,*
    216 F.R.D. 133 (D.D.C. 2002) ................................................................................... 30

*Markowicz v. Johnson,*
    206 F. Supp. 3d 158 (D.D.C. 2016) ............................................................................. 2

*Mashpee Wampanoag Tribal Council, Inc. v. Norton,*
    336 F.3d 1094 (D.C. Cir. 2003) .............................................................................. 21, 22

*Milligan v. Pompeo,*
    502 F. Supp. 3d 302 (D.D.C. 2020) ........................................................................ 18, 23

*Mohammad v. Blinken,*
    548 F. Supp. 3d 159 (D.D.C. 2021) 5 ..................................................................... 18, 23

*Mosley v. Gen. Motors Corp.,*
    497 F.2d 1330 (8th Cir. 1974) .................................................................................. 30

*Nine Iraqi Allies v. Kerry,*
    168 F. Supp. 3d 268 (D.D.C. 2016) ......................................................................... 12, 15

*Norton v. S. Utah Wilderness,*
    *All.*, 542 U.S. 55 (2004) .......................................................................................... 19, 20

*OC Modeling, LLC v. Pompeo,*
    Civ. A. No. 20-1687, 2020 WL 7263278 (C.D. Cal. Oct. 7, 2020) ............................. 16

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................................. 11

*Park v. Gonzales,*
    450 F. Supp. 2d 1153 (D. Or. 2006) ........................................................................ 25

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.,*
    43 F. Supp. 3d 28 (D.D.C. 2014) ............................................................................... 2

*Pinson v. U.S. Dep't of Justice,*
    74 F. Supp. 3d 283 (D.D.C. 2014) ........................................................................... 30

*Pourshakouri v. Pompeo,*
    Civ. A. No. 20-0402, 2021 WL 3552199 (D.D.C. Aug. 11, 2021) ............................. 21

*Rice v. Sunrise Express, Inc.,*
    209 F.3d 1008 (7th Cir. 2000) ................................................................................. 30

*Richardson v. Kerry*,
    Civ. A. No. 14-0742, 2014 WL 4385995 (S.D. Tex. Sept. 4, 2014) ....................................... 25

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ........................................................................................ 13, 16

*Sarlak v. Pompeo*,
    Civ. A. No. 20-0035 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020) ........................ 18, 22

*Sayad v. Dep't of Homeland Sec.*,
    Civ. A. No. 20-2333 (TSC), 2022 WL 4130840 (D.D.C. Sept. 12, 2022) ........................ 12, 13

*Scott v. Harris*,
    550 U.S. 372 (2007)....................................................................................................................... 11

*Shen v. Pompeo*,
    Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021),........................ 18, 23

*Skalka v. Kelly*,
    246 F. Supp. 3d 147 (D.D.C. 2017) .............................................................................. 18, 21, 24

*Spaeth v. Mich. St. Univ. Coll. of Law*,
    845 F. Supp. 2d 48 (D.D.C. 2012) ................................................................................... 29, 30

*Tate v. Pompeo*,
    513 F. Supp. 3d 132 (D.D.C. 2021) ................................................................................. 22, 23

*Tesfaye v. Blinken*,
    Civ. A. No. 22-0411 (CKK), 2022 WL 4534863 (D.D.C. Sept. 28, 2022) ............................ 15

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) ................................................................................................. 10

*Telecom Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)........................................................................................ 17, 18, 24

*U.S. Telecom Ass'n v. FCC*,
    359 F.3d 554 (D.C. Cir. 2004)...................................................................................... 26, 27, 29

*Stand Up for Cal.! v. Dep't of the Interior*,
    994 F.3d 616 (D.C. Cir. 2021) ................................................................................................. 26

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)................................................................................................................... 13

*United States v. Giordano*,
    416 U.S. 505 (1974)................................................................................................................... 26

*United States v. Matherson*,
   367 F. Supp. 779 (E.D.N.Y.1973) .......................................................................... 28

*Varol v. Radel*,
   420 F. Supp. 3d 1089 (S.D. Cal. 2019).................................................................... 23

*W. Org. of Res. Councils v. Zinke*,
   892 F.3d 1234 (D.C. Cir. 2018)................................................................................ 20

*Wan Shih Hsieh v. Kiley*,
   569 F.2d 1179 (2d Cir. 1978)............................................................................ 13, 14

*Wilson v. Wolf*,
   Civ. A. No. 20-0100 (ABJ), 2021 WL 230136 (D.D.C. Jan. 22, 2021) ..................... 3

*Xu v. Cissna*,
   434 F. Supp. 3d 43 (S.D.N.Y. 2020)................................................................. 21, 22

*Yavari v. Pompeo*,
   Civ. A. No. 19-02524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019)...................... 21

*Zaman v. Dep't of Homeland Sec.*,
   Civ. A. No. 19-3592 (ABJ), 2021 WL 5356284 (D.D.C. Nov. 16, 2021)................. 21

**Statutes**

5 U.S.C. § 706(1) .......................................................................................................... 17

8 U.S.C. § 1153(g) ....................................................................................... 25, 26, 27, 28

8 U.S.C. § 1154 ............................................................................................................. 27

8 U.S.C. § 1155 ....................................................................................................... 27, 28

8 U.S.C. § 1201(g) .............................................................................................. 14, 15, 16

8 U.S.C. § 1252 ............................................................................................................. 28

U.S.C. § 1155 ............................................................................................................... 27

**Regulations**

8 C.F.R. § 42.67 ............................................................................................................ 25

8 C.F.R. § 42.83 ............................................................................................................ 25

8 C.F.R. § 205.1(a)............................................................................................ 1, 19, 27

8 C.F.R. § 205.1(a)(1)........................................................................................ 10, 25, 28

22 C.F.R. § 42.62 ................................................................................................................ 19

22 C.F.R. § 42.81 ................................................................................................................ 19

C.F.R. § 205.1(a)(1) ..................................................................................................... 25, 28

Other Authorities

*Federal Practice and Procedure* § 1689 ................................................................... 29

By and through their undersigned counsel, Defendants—certain agencies and officials of the United States responsible for administering the Nation's immigration laws and programs— respectfully move to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), for summary judgment under Rule 56 or, in the alternative, to sever Plaintiffs' claims under Rule 21.[1]  For the reasons explained below, the Court should grant this motion.

## **BACKGROUND**

Through this action, Plaintiffs seek to compel the Government to decide their various requests for immigrant visas.  *See generally* Am. Compl. Plaintiffs contend that they submitted immigrant visa applications to five different U.S. embassies or consulates between March 6 and October 29, 2019.  Am. Compl. ¶¶ 8-25.  Specifically, they claim that their visa applications are pending at (1) the U.S. Embassy in San Jose, Costa Rica, (2) the U.S. Embassy in Bogota, Columbia, (3) the U.S. Consulate General in Rio De Janiero, Brazil, (4) the U.S. Embassy in Tbilisi, Georgia, (5) the U.S. Consulate General in Guayaquil, Ecuador (collectively, the "Foreign Jurisdictions") or (6) State Department's National Visa Center ("NVC").  *See id.*  The postures of the requests for each Plaintiff are described below

### I.  **Plaintiffs' Applications**

### A.  **Plaintiff Pacheco Quiros**

Southeastern Janitorial of SC LLC filed a Form I-140, Petition for Alien Worker, with the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS") on behalf Katherine Daniela Pacheco Quiros.  Decl. of Chloe Peterman ("Peterman

---

[1]      Pursuant to Local Civil Rule 7(m), undersigned counsel has conferred with counsel for Plaintiffs as to this alternative relief and counsel for Plaintiffs indicates that Plaintiffs do not consent.

Decl.") ¶ 3.  That petition was approved and, upon receipt by State, was assigned case number SNJ2019564002.  *Id.* ¶ 4; *see also* Am. Compl. ¶ 8.  On September 7, 2022, Ms. Pacheco Quiros applied for an immigrant visa before a consular officer at the U.S. Embassy in San Jose, Costa Rica.  Peterman Decl. ¶ 6.  Ms. Pacheco Quiros was found eligible and issued an immigrant visa. *Id.*  Below is a screen shot from the publicly available Visa Status Check system provided by the State Department's Consular Electronic Application Center ("CEAC") showing that the visa application bearing the above case number has been issued.



CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case no. SNJ2019564002 at San Jose, Costa Rica).[2]

---

[2]     The Court may take judicial notice of information posted on official public websites of government agencies.  *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (Contreras, J.) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human*

**B.  The E. Davila Rivero Family**

Southeastern Janitorial of SC LLC filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Edgar Jose Davila Rivero.  Peterman Decl. ¶ 7.  Mr. Davila Rivero's case includes a derivative spouse, Suheil Dajennic Cartaya Villanueva, and two derivative children Doriana Paola and Edgar Davis (collectively, the "E. Davila Rivero Family").  *Id.*  These Plaintiffs allege that their application has "been pending with the [NVC] since on or before April 12, 2019, but have not yet been forwarded to the appropriate consular officer."  Am. Compl. ¶ 11.  But, in reality, they have not yet completed the steps for the case to become documentarily qualified so that they may be scheduled to make an immigrant visa application at an interview.[3]  Peterman Decl. ¶ 9.

**C.  Plaintiff Bichinho**

Dycos Services, Inc. filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Giovana Tabajara Bichinho. Peterman Decl. ¶ 10.  NVC was notified that the I-140 was approved and a case created on April 13, 2019.  *Id.* ¶ 11.  Ms. Tabajara Bichinho's case was assigned number RDJ2019601006.  *Id.*; *see also* Am. Compl. ¶ 12.  On July 16, 2019, Ms. Tabajara Bichinho' case became documentarily qualified for Ms. Tabajara Bichinho to be scheduled to make an immigrant

---

*Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (Contreras, J.) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))).  As such, the Court can consider the websites cited herein without converting this motion into one seeking summary judgment. *See, e.g., Wilson v. Wolf*, Civ. A. No. 20-0100 (ABJ), 2021 WL 230136, at *4 (D.D.C. Jan. 22, 2021) ("In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'") (citing, among others, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

[3]     Those steps are identified in 9 FAM 504.1-2.

visa application at an interview.  Peterman Decl. ¶ 12.  On December 11, 2019, Ms. Tabajara Bichinho appeared for an interview at the U.S. Consulate General in Rio de Janeiro, Brazil, and applied for an immigrant visa.  *Id.* ¶ 13.  The consular officer refused the visa application under section 221(g) of the Immigration and Nationality Act ("INA") and returned the I-140 to USCIS for review and possible revocation.  *Id.*; *see also* Am. Compl. ¶ 13.  On March 23, 2022, the consular section at the U.S. Consulate General in Rio de Janeiro received the I-140 petition filed on behalf of Ms. Tabajara Bichinho, which had been reaffirmed by USCIS.  Peterman Decl. ¶ 14. Ms. Tabajara Bichinho is therefore free to reapply for an immigrant visa, but has not yet done so. *Id.* ¶ 12.

### D.  Plaintiff Karimova

JKS & K, Inc. filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Gulshan Karimova.  Peterman Decl. ¶ 15.   The I-140 was approved and a case created on October 2, 2019.  *Id.* ¶ 16.  Ms. Karimova's case was assigned number TBL2019774003.  *Id.*; *see also* Am. Compl. ¶ 15.  On January 22, 2020, Ms. Karimova appeared for an interview at the U.S. Embassy in Tbilisi, Georgia, and applied for an immigrant visa.  Peterman Decl. ¶ 18.  The consular officer refused the visa application under INA section 221(g).  *Id.*  Below is a screenshot from the CEAC Visa Status Check system showing that the visa application bearing the above case number has been refused.



CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case no. TBL2019774003 at Tiblisi, Georgia).

**E.  The Campoy Family**

JKS & K, Inc. filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Guilherme Marques Campoy.  Peterman Decl. ¶ 19.  Mr. Marques Campoy's case includes a derivative spouse, Patricia Nogueira Plentz Palandi, and a derivative child, Pietra (collectively, the "Campoy Family").  *Id.*  Mr. Campoy's petition was approved and, upon receipt by State, was assigned case number RDJ2019801001.  *Id.* ¶ 20; *see also* Am. Compl. ¶ 16.  On November 19, 2021, Mr. Marques Campoy and his family appeared for an interview at the U.S. Consulate General in Rio de Janeiro, Brazil, and applied for immigrant visas.   Peterman Decl.  ¶ 22.  The consular officer refused the visa applications under INA section 221(g).  *Id.*; *see also* Am. Compl. ¶ 17.  But, Mr. Marques Campoy and his family were later found eligible and issued immigrant

visas on February 25, 2022.   Peterman Decl. ¶ 23.  Below is a screen shot from the CEAC Visa Status Check system showing that the visa applications bearing the above case number have been issued.



CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case no. RDJ2019801001 at Rio De Janeiro, Brazil).

### F.  The Leonardo Family

Dycos Services, Inc. filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Joya Ovalle Rafael Leonardo.  Peterman Decl. ¶ 24.  Mr. Rafael Leonardo's case includes a derivative spouse, Karen Margarita Sierra Sanchez, and derivative children, Thomas and Briana (collectively, the "Leonardo Family").  *Id.*  Mr. Rafael Leonardo's petition was approved and assigned case number BGT2019678018.  *Id.* ¶ 25; *see also* Am. Compl. ¶ 19.   On December 2, 2019, Mr. Rafael Leonardo appeared for an interview at the U.S. Embassy in Bogota, Columbia, and applied for an immigrant visa.  Peterman Decl. ¶ 27; *see also* Am. Compl. ¶ 19.  The consular

officer refused the visa application under INA section 221(g).  Peterman Decl. ¶ 27.  Below is a screenshot from the CEAC Visa Status Check system showing that the visa application bearing the above case number have been refused.



CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case no. BGT2019678018 at Bogota, Columbia).[4]

### G.      The Bassanini Ramirez Family

Sej Services, LLC. Filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Manuel Francisco Bassanini Ramirez.  Peterman Decl. ¶ 29.  Mr. Bassanini Ramirez's case includes a derivative spouse, Erika Patricia Serrano Traverso (collectively, the "Bassanini Ramirez

---

[4]      In their Amended Complaint, these Plaintiffs allege that their registration was terminated. *See* Am. Compl. ¶¶ 19-20.  State has no record that the case concerning the Leonardo Family was, in fact, terminated under INA section 203(g).  Peterman Decl. ¶ 28.

Family").[5]  *Id.*  Mr. Bassanini Ramirez's petition was approved and, upon receipt by State, was assigned case number GY02019587004.  *Id.* ¶ 30; *see also* Am. Compl. ¶ 22.  On June 6, 2022 Mr. Bassanini Ramirez appeared for an interview at the U.S. Consulate General in Guayaquil, Ecuador, and reapplied for an immigrant visa.  *Id.* ¶ 34.  Mr. Bassanini Ramirez and his spouse were found eligible and issued immigrant visas.  *Id.*  Below is a screen shot from the CEAC Visa Status Check system showing that the visa applications bearing the above case number have been issued.



---

[5]      The Amended Complaint also lists Jose Manuel Bassanini Serrano and Juan Xavier Bassanrnini [sic] Serrano as plaintiffs.  *See generally* Am. Compl.  Neither of these individuals is associated with case number GY02019587004, Peterman Decl. ¶ 28, and there are no allegations anywhere in the Amended Complaint establishing that they have any other case pending with Defendants, *see generally* Am. Compl.

CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case no. GY02019587004 at Rio De Janeiro, Brazil).

###### H.       The A. Davila Rivero Family

Dycos Services, Inc. filed a Form I-140, Petition for Alien Worker, with USCIS on behalf Alvaro Jose Davila Rivero.  Peterman Decl. ¶ 35.  Mr. Davila Rivero's case includes a derivative spouse, Mariela Carolina Sierra Franceschi, and derivative children, Nicole, Alvaro, and Emma (collectively, the "A. Davila Rivero Family".  *Id.*  The I-410 was approved and Mr. Davila Rivero's case was assigned number CRS2019602001.  *Id.* ¶ 36; *see also* Am. Compl. ¶ 23.  On November 6, 2019, Mr. Davila Rivero was scheduled to appear for an interview at the U.S. Embassy in Bogota, Colombia, and apply for an immigrant visa.  *Id.* ¶ 37.  Mr. Davila Rivero did not appear and therefore did not execute an immigrant visa application.  *Id.* ¶ 38.

On February 21, 2020, counsel for Mr. Davila Rivero contacted the consular section at the U.S. Embassy in Bogota regarding Mr. Davila Rivero appearing at a later time to execute an immigrant visa application.  *Id.* ¶ 39.  The consular section responded on February 25, 2020 with instructions.  *Id.*  Neither Mr. Davila Rivero nor his counsel ever responded.  *Id.*  On July 2, the consular section sent Mr. Davila Rivero notice that his petition risked termination under INA section 203(g) because he had failed to apply for an immigrant visa for more than one year following notice of visa availability.  *Id.* ¶ 40.  Yet, there was still no response from Mr. Davila Rivero or his counsel.  *Id.*

On July 11, 2022, the consular section sent Mr. Davila Rivero a notice that his petition had to be terminated under INA section 203(g) because he failed to apply for an immigrant visa for more than one year following notice of visa available and had failed to show, in the year after that, that his failure to apply for an immigrant visa was for circumstances beyond his control.  *Id.* ¶ 41.

## II.    Plaintiffs' Claims

Plaintiffs initiated this lawsuit and later filed an Amended Complaint on December 18, 2021.  In Count I, Plaintiffs challenge the purported delay in consular officers adjudicating their immigrant visa applicaitons that have been pending at consulates and embassies in the Foreign Jurisdictions.  *See* Am. Compl. ¶¶ 26-41.  In Count II, the E. Davila Rivero Family challenges the supposed delay in transferring their visa requests from the NVC to the appropriate consular officer in Columbia.  *See id.* ¶¶ 42-52.  In Count III, Plaintiffs challenge the termination of any of their registrations by anyone other than the Secretary of State.  *See id.* ¶¶ 53-55.  Lastly, in Count IV, Plaintiffs contend that 8 C.F.R. § 205.1(a)(1), which automatically revokes the approval for any petition whose registration is terminated by the Secretary of State, is unlawful because, according to them, it constitutes an improper delegation of authority.

## LEGAL STANDARDS

### I.    Dismissal Under Rule 12

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## II.    Summary Judgment Under Rule 56

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant.  *Scott v. Harris*, 550 U.S. 372, 380, 127 (2007).  The burden is on the nonmovant to identify specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986). When considering a motion for summary judgment, the Court analyzes all underlying facts and inferences in the light most favorable to the nonmovant, *Anderson*, 477 U.S. at 255, and "eschew[s] making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

## ARGUMENT

I.  **Counts I and II of the Amended Complaint Should Be Dismissed or, in the Alternative, the Court Should Grant Defendants Summary Judgment on Those Claims.**

In Counts I and II, Plaintiffs assert mandamus challenges, arguing that State Department has unreasonably delayed the adjudication of their requests for immigrant visas, either at the U.S. Consulates and Embassies in the Foreign Jurisdictions or at the NVC.  As demonstrated below, these claims fail for multiple reasons.

### A. Claims Asserted by Plaintiffs Who Have Been Issued Their Sought-After Visas Are Moot.

The claims asserted by Ms. Pacheco Quiros, the Campoy Family, and the Bassanini Ramirez Family should be dismissed.  As noted above, these Plaintiffs have been found eligible and issued the immigrant visas sought in this action.  *See* Peterman Decl. ¶¶ 4, 21, 31; CEAC, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case nos. SNJ2019564002, RDJ2019801001, and GY02019587004).  Because a consular officer of the State Department has issued the requested visas, their claims are plainly moot.  *See Sayad v. Dep't of Homeland Sec.*, Civ. A. No. 20-2333 (TSC), 2022 WL 4130840, at *2 (D.D.C. Sept. 12, 2022) (dismissing visa mandamus case as moot when a consular officer issued a final decision on the relevant visa application); *Aboutalebi v. Dep't of State*, Civ. A. No. 19-2605 (TJK), 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019) (same); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 277-78 (D.D.C. 2016) (dismissing visa mandamus claims of those plaintiffs that had been issued as moot).  That is, because the Court's jurisdiction under the Constitution extends only to actual, ongoing controversies, it precludes the Court from deciding cases where the issues presented are no longer live.  *Sayad*, 2022 WL 4130840, at *2.  Here, because these Plaintiffs received exactly what the Amended Complaint sought—adjudication of their visa applications—there no longer remains a

live controversy, and the Court can grant no meaningful relief to them. *Id.* Accordingly, the Court should dismiss their claims for a lack of jurisdiction under Rule 12(b)(1).

### B. Claims Asserted by Plaintiffs' Who Have Had Their Visa Applications Refused Are Untenable Due to the Consular Non-Reviewability Doctrine.

The visa applications for the Leonardo Family and Ms. Karimova have already been refused and therefore the doctrine of consular non-reviewability bars claims based on their applications. *See* Am. Compl. ¶¶ 15, 19 (identifying State Department application numbers); CEAC, Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (results for case nos. BGT2019678018 at Bogota, Columbia, and TBL2019774003 at Tiblisi, Georgia, showing applications "Refused").

As the D.C. Circuit has reaffirmed, "[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (emphasis added) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (internal alterations, quotation marks, and citation omitted); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [non-citizen]"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

In *Baan Rao*, the D.C. Circuit went on to note that there are only "two narrow circumstances" where the doctrine does not apply: (1) where an U.S. citizen challenges the exclusion of a noncitizen if it burdens the citizen's constitutional rights; and (2) where Congress says otherwise. *Id.* (collecting citations). Notably, the Circuit did not include an exception for the claims brought here—a suit seeking to compel further decisions on visa applications that have already been refused. Moreover, while styled as a suit seeking mandamus, ultimately Plaintiffs ask the Court to decide whether the consular officer can continue to withhold the visa based on the officers' initial refusals or must make additional decisions to issue or withhold the visa. No reading of *Baan Rao* and the D.C. Circuit's precedents permits such a claim seeking review of the merits or duration of a consular officer's withholding of a visa.

Indeed, by confining the exceptions to the doctrine and noting that doctrine prevents review of decisions to "withhold" visas, the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Circuit's clear guidance, Plaintiff's Amended Complaint fails to state a claim for relief. *Baan Rao*, 985 F.3d at 1027-29 (consular non-reviewability is a merits disposition properly brought under Rule 12(b)(6)).

Defendants appreciate that various judges in this District have held that the doctrine does not apply in cases where, as here, a consular officer has refused a visa application under 8 U.S.C. § 1201(g), based on a noncitizen's failure to establish their eligibility subject to further

administrative processing. *See, e.g.*, *Al-Gharawy v. Dep't of Homeland Sec.*, Civ. A. No. 21-1521 (RDM), 2022 WL 2966333, at *6 (D.D.C. July 27, 2022). Defendants respectfully disagree with these holdings.

First, as Judge Moss wrote in *Al-Gharawy*, no decision from this District before July 2022 attempted to square the diverging views of *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 293 (D.D.C. 2016) (Kessler, J.) (the ultimate source of decisions finding the doctrine inapplicable), and the decisions from courts in the Second Circuit cited above. As such, cases that pre-date *Al-Gharawy* fail to grapple with the judiciary's diverging views on the central issue here—i.e., does the consular non-reviewability doctrine contain an exception that allows the Court to compel a consular officer to reach another decision on a visa application after they have refused it? As discussed above, no such exception exists under the text of the INA or D.C. Circuit precedents.

Indeed, contrary to the holding of *Al-Gharawy*, by refusing the visa applications here under 8 U.S.C. § 1201(g), the consular officials have adjudicated the applications as contemplated by the Department's regulations and the INA. *See Tesfaye v. Blinken*, Civ. A. No. 22-0411 (CKK), 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022) (questioning what "non-discretionary duty" was "unlawfully withheld" where applications were "refused" under 8 U.S.C. § 1201(g) as contemplated by operative regulation). Indisputably, that decision remains final unless superseded by another decision. Indeed, an INA § 221(g) refusal is not a "temporary" or "passive" refusal as the *Al-Gharawy* court suggested. *Al-Gharawy*, 2022 WL 2966333, at *8. Instead, it reflects a determination by a consular officer that the noncitizen is ineligible to receive a visa, the application fails to comply with applicable requirements, or the official has reason to believe that the noncitizen is ineligible to receive a visa. 8 U.S.C. § 1201(g). In other words, by refusing the visas under INA 221(g), a consular official has determined that the noncitizen failed to meet their burden

to establish eligibility for a visa. While additional documentation or investigation may prompt a consular official to revisit those decision, and processes may be underway to explore that possibility, the consular official has decided to "withhold" the visa. Indeed, even if "withhold" as used in *Baan Rao*, 985 F.3d at 1024, is synonymous with active terms such as "disallow," *Al-Gharawy*, 2022 WL 2966333, at *8, there is no daylight between the term "refusal" as used in the statute and an active verb such as "disallow."

In this case, the consular officials have decided not to issue visas in response to the visa applications submitted by the Leonardo Family and Ms. Karimova. Those decisions are immune from review in this Court because unlike other administrative decisions, consular official actions with respect to visas are presumptively non-reviewable in court absent statutory provisions to the contrary. *Saavedra Bruno*, 197 F.3d at 1162 ("Congress could safely assume that [non-citizens] residing abroad were barred from challenging consular visa decisions in federal court unless legislation specifically permitted such actions. The presumption, in other words, is the opposite of what the APA normally supposes."). And Plaintiffs should not be allowed to circumvent that rule by seeking to compel a consular official to make another decision on a visa application after a consular officer has already decided to functionally disallow or withhold the visa here. *See OC Modeling, LLC v. Pompeo*, Civ. A. No. 20-1687, 2020 WL 7263278, at *3 (C.D. Cal. Oct. 7, 2020) ("Here, the consular office has refused [the noncitizen's] temporary work nonimmigrant visa application under INA § 221(g), 8 U.S.C. § 1201(g). Because the consular office has already rendered a decision on Plaintiff's visa applications, this Court lacks authority to review the decision under the doctrine of consular nonreviewability."); *see* S. Rep. No. 81-1515 at 612 (1950) ("The authority of the consular officers under the law is *plenary*. There is no official or judicial review of their action and issuance of a visa is entirely in their discretion.") (emphasis added).

- 16 -

Ultimately, Plaintiffs seek an order for a consular officer to issue another decision on the applications. That is, Plaintiffs do not seek to compel the Department to prematurely halt or conclude any ongoing administrative processes that might produce information sufficient to establish the applicant's eligibility for the requested visa. Instead, Plaintiffs ask the Court to compel the Department to revisit the ultimate question on the existing record, which a consular officer already had found to be inadequate to support the applicants' eligibility for visas. Nothing in *Baan Rao* cabins the consular non-reviewability doctrine in a manner that would permit a court to compel a consular official to repeatedly re-adjudicate ad infinitum a request that already has been refused.

### C.  Plaintiffs' Mandamus Claims Fail On the Merits.

When a plaintiff seeks a writ of mandamus to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecom. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).  Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

   (1)    the time agencies take to make decisions must be governed by a rule of reason;

   (2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

   (3)    delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).  Applying these factors here makes clear that Plaintiffs' claims fail.

        1.     *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in Defendants' favor.  *See Dastagir v. Blinken,* 557 F. Supp. 3d 160, 165-67 (D.D.C. 2021); *Mohammad v. Blinken,* 548 F. Supp. 3d 159, 166 (D.D.C. 2021);  *Liu v. Blinken*, 544 F. Supp. 3d 1, 11-12 (D.D.C. 2021); *Shen v. Pompeo,* Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318-19 (D.D.C. 2020).   These factors ask whether the length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress.  *Id.*  There is no statutory or regulatory timeframe within which the State Department or a consular officer must adjudicate or re-adjudicate visa applications.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (Leon, J.) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").   Because Congress has established no firm timetable for consular officials to adjudicate or re-adjudicate the visa applications at issue here, the Court must determine whether the applications have been pending for an unreasonable amount of time as established by case law.  *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally

supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable.).

Here, the Plaintiffs can find no support for their claims of unreasonable delay.  To start, many of the Plaintiffs cannot even claim that they have suffered any agency delay at all because they themselves have not taken the steps necessary to enable State Department to act.   The A. Davila Rivero Family, for example, was scheduled to appear for an interview and execute an immigrant visa application, but never showed up.  *See* Peterman Decl. ¶ 38.  Personal appearance at an interview is required for the applicant to execute a visa application and for the consular official to determine the applicant's eligibility to receive a visa.  *See* 22 C.F.R. § 42.62.   It is only then that a consular officer could have either Issued or refused to issue the requested visas.  *See* 22 C.F.R. § 42.81; 9 FAM 504.1-3(f)-(g).  And while State Department gave the A. Davila Rivero Family instructions about how they might reschedule their interview, they never responded.  *See* Peterman Decl. ¶ 39.  State Department also warned the family in July 2021 that the registration risked termination for failure to make a timely application.  *Id.* ¶ 40.  A year then passed and yet there was still no response from the A. Davila Rivero Family.  *Id.* ¶¶ 40-41.  As a result, their registration was terminated, *id.* ¶ 41, and their immigrant petition automatically revoked, *see* 8 C.F.R. § 205.1(a).  As such, there is not now—nor has there ever been—a delay of any discrete agency action that Defendants were required to take.  Rather, their requests for visas died on the vine because they failed to take action.  Because Plaintiffs can identify no discrete agency action that Defendants were required to take under these circumstances, their claim must fail.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (holding that mandamus claim can only be maintained when there is a delay of "a discrete agency action that it is required to take").

Likewise, the E. Davila Rivero family never even completed the steps necessary to become documentarily qualified.[6]   Peterman Decl. ¶ 9.   As such, they cannot even be scheduled for an interview to submit an immigrant visa application, *see* 9 FAM 504.1-2(b), let alone have one adjudicated.  *Cf. Eljalabi v. Blinken*, Civ. A. No. 21-1730 (RC), 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (analyzing length of government delay from date that plaintiff became documentarily qualified).  Because the E. Davila Rivero Family can identify no authority that State Department was "required" to take any discrete action under these circumstances, their claims also fail.  *S. Utah Wilderness All.*, 542 U.S. at 63 ("[T]he only agency action that can be compelled under the APA is action legally required."); *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) ("The legal duty must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'").

The circumstances underlying the claim for Plaintiff Bichinho similarly demonstrates that it is State Department that is awaiting action from the applicant.  Indeed, Plaintiff Bichinho had her immigration petition reaffirmed by USCIS in March 2022 and can now reapply for an immigrant visa, yet she has not done so.  Peterman Decl. ¶ 14.  Having failed to reapply for an immigrant visa, she can hardly blame State Department for "unreasonable delay" in adjudicating such an application.  Indeed, there is no action that Plaintiff Bichinho can claim State Department was required to take, but has failed to do so.

Lastly, as noted above, the Leonardo Family and Ms. Karamova already had their applications adjudicated and refused in December 2019 and January 2020, respectively.  *See*

---

[6]      A case is not documentarily complete until (1) all required fees have been paid; (2) a form DS-260, Online Application for Immigrant Visa and Alien Registration, for each traveling applicant has been completed; (3) the necessary policy certificates have been submitted, and (4) if applicable, a properly completed Form I-864, Affidavit of Support Under Section 213A of the Act, and supporting documents have been submitted.  *See* 9 FAM 504.1-2(b)(2).

Peterman Decl. ¶¶ 18, 27.  While it is possible that a consular officer might revisit these decisions in the future upon receipt of documents or information that might allow the applicants to overcome the prior refusal, even if one could claim a "delay" in doing so, the timing here simply would not support the notion that any such delay was unreasonable.  Indeed, courts in this District and elsewhere have routinely concluded that delays for immigration benefits such as these do not constitute unreasonable delay.  *See  Arab v. Blinken,* Civ. A. No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *Zaman v. U.S. De''t of Homeland Sec.*, Civ. A. No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay  of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, Civ. A. No. 20-0402, 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Skalka*, 246 F. Supp. 3d at 153-54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable); *Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding a three-year delay in adjudicating an asylum application to not be unreasonable under the APA); *Yavari v. Pompeo*, Civ. A. No. 19-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

In view of the foregoing, *TRAC* Factors 1 and 2 plainly favor Defendants

   2. *TRAC* <u>Factor 4</u>

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), and weighs heavily in Defendants' favor as Plaintiffs ask this Court to move their applications ahead of other pending applications, *see* Am. Compl., Prayer for Relief.  Indeed, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication

is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting *Sarlak*, 2020 WL 3082018, at *6).

Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others. *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Bates, J.) (courts will not compel agency action where result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *Mashpee Wampanoag*, 336 F.3d at 1101 ("We agree with the Secretary that the district court erred by disregarding the importance of there being 'competing priorities' for limited resources.  The district court offered no legal justification for precluding the Secretary from relying upon her 'first-come' procedure, and we can conjure none."); *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); *Sarlak*, 2020 WL 3082018, at *6 (finding that the fourth factor weighed in the government's favor because expediting the plaintiff's waiver would harm other agency activities of equal or greater priority); *Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (finding that "expediting review in [plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."). Mandamus relief is inappropriate in this context. *See Liberty Fund*, 394 F. Supp. 2d at 117; *see also Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in

line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief.").

To be sure, Plaintiffs may argue that this case presents the adjudication or re-adjudication of only a handful of applications, which would not fundamentally recalibrate the Department's processing priorities if the Court were to grant Plaintiffs' requested relief.  But the Court should not struggle to cast this argument aside.  As another court in this District explained when rejecting a similar argument, this *TRAC* factor nonetheless favors the Government because "[w]hile the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities."  *Tate*, 513 F. Supp. 3d at 150.  Thus, "[t]his factor heavily favors defendants' position." *Id.*; *see also Dastagir*, 2021 WL 2894645, at *5-6; *Mohammad*, 2021 WL 2866058, at *5-6; *Liu*, 2021 WL 2514692, at *7; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319.

3.  *TRAC* Factors 3 and 5

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay."  *Liberty Fund*, 394 F. Supp. 2d at 118.  These factors also weigh in Defendants' favor.  Here, Defendants understand that Plaintiffs allege that the purported delays have impacted their lives.  *See generally* Am. Compl.  Even so, advancing the applications here would simply benefit Plaintiffs to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay. Indeed, expediting review in this case over the applications of other noncitizens would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the State Department's prioritization decisions and place Plaintiff

at the front of the line.  *See Barr Labs*, 930 F.2d at 75-76 (observing that "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain[,]" and that agencies are in the best position to allocate their own resources); *Skalka*, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response").

4.     *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  In the Amended Complaint, Plaintiffs do not allege bad faith on the part of the State Department.  *See generally* Am. Compl.  Thus, this factor does not favor Plaintiffs.

## II.  The Court Should Dismiss Counts III and IV for Failure to State A Plausible Claim to Relief.

In addition to the mandamus challenges, the A. Davila Rivero Family and the Leonardo Family[7] also bring challenges based on how the Secretary of State terminates registrations and DHS's consequential revocation of any previously approved immigration petition.

Under 8 U.S.C. § 1153(g), the Secretary of State has the authority to estimate the number of anticipated visas and is required to "terminate the registration of any [non-citizen] who fails to

---

[7]     For the Leonardo Family, these claims should be dismissed for lack of standing because the immigration case concerning the Leonardo Family was not terminated under INA section 203(g).  Peterman Decl. ¶ 28.  Having not suffered any injury in fact, they lack standing to assert challenges to the statutory and regulatory regime concerning the termination of registrations.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explain that "the irreducible constitutional minimum of standing contains three elements," including "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . [and] (b) actual or imminent, not 'conjectural' or 'hypothetical'" (cleaned up)).

apply for an immigrant visa within one year following notification to the [non-citizen] of the availability of such visa."  8 U.S.C. § 1153(g); *see also* 9 FAM 501.1-4(B).   A non-citizen is deemed "registered" for purposes of § 1153(g) when he or she files an application for immigrant visa (Form DS-230 or Form DS-260), or when the State Department notifies the non-citizen "of the availability of an immigrant visa, whichever occurs first." 8 C.F.R. § 42.67; *Park v. Gonzales*, 450 F. Supp. 2d 1153, 1157 (D. Or. 2006); *Richardson v. Kerry*, Civ. A. No. 14-0742, 2014 WL 4385995, at *3 (S.D. Tex. Sept. 4, 2014); *see also* 8 C.F.R. § 42.83 ("[A non-citizen's] registration for an immigrant visa shall be terminated if, within one year after transmission of a notification of the availability of an immigrant visa, the applicant fails to apply for an immigrant visa."). "If the Secretary of State terminates an [non-citizen]'s registration, [the immigration petition] filed on her behalf is automatically revoked." *Richardson*, 2014 WL 4385995, at *3 (citing 8 C.F.R. § 205.1(a)(1), and *Park*, 450 F. Supp. 2d at 1157).

### A.  Count III is Without Merit Because A Subdelegation to a Subordinate Officer Is Not Improper.

First, Plaintiffs claim that the terminations of their registrations were unlawful because they believe, based upon "information and belief," that it was affected by "an employee or agent of the Department of State other than the Secretary of State." *See* Am. Compl. ¶¶ 20, 24, 54.  In their view, 8 U.S.C. § 1153(g) "authorizes only the Secretary of State to terminate the registration of any noncitizen who fails to [timely] apply for an immigrant visa[.]"  *Id.*  ¶ 53.  Plaintiffs fundamentally misunderstand the law.

"When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent."  *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004) (collecting cases); *see also United States v. Giordano*, 416 U.S. 505, 514 (1974) (describing as

"unexceptionable" the "general proposition" that an agency head may delegate authority to a subordinate of her choosing); *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 122 (1947). This is sensible because "[w]hen an agency delegates authority to its subordinate, responsibility—and thus accountability—clearly remain with the federal agency." *U.S. Telecom Ass'n*, 359 F.3d at 565. "If Congress wants to make clear that a function or duty is exclusive [to a particular official], it may do so through clear statutory mandates." *Stand Up for California! v. United States Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021).

Here, § 1153(g) provides that "[t]he Secretary of State shall terminate the registration of any [non-citizen] who fails to apply for an immigrant visa within one year following notification to the [non-citizen] of the availability of such visa." But it does not say that *only* the Secretary of State may take this action, nor does it otherwise forbid the delegation of this responsibility. *See* 8 U.S.C. § 1153(g). Nor does the text, when "fairly read" in light of the statutory purpose, evince a congressional desire to render this function non-delegable. *See Giordano*, 416 U.S. at 514. Indeed, the statute merely instructs the Secretary of State that he "*shall* terminate" registrations when immigrant visas are not timely filed. *See* 8 U.S.C. § 1153(g) (emphasis added). It provides the Secretary no discretion in the matter and, therefore, whether the termination is personally affected by the Secretary or his subordinate makes no difference because Congress intended for that particular result. Plaintiffs can point to no other indicia suggesting that Congress wanted the power to terminate registrations under these circumstances to be limited only to the Secretary. Thus, even accepting Plaintiffs' allegations as true, a bare allegation that someone other than the Secretary of State himself was responsible for terminating the Plaintiffs' registrations does not state a plausible claim for relief. This Court should therefore dismiss Count III of the Amended Complaint.

**B.  Count IV Fails Because 8 C.F.R. § 205.1(a) Does Not Affect Any Improper Delegation of Authority.**

Plaintiffs next challenge the propriety of 8 C.F.R. § 205.1(a), which automatically revokes immigrant visa petitions when a beneficiary's registration has been terminated.  They argue that, because Congress vested discretion to revoke immigrant petitions in the Secretary of Homeland Security, it is improper for the Secretary to Homeland Security to look to the Secretary of State and whether he has terminated the beneficiary's registration.  *See* Am. Compl. ¶¶ 21, 25, 56-61. They claim that this amounts to an impermissible subdelegation of authority.  Plaintiffs are mistaken.

To be sure, Congress vested authority to revoke immigrant visa petitions in the Secretary of Homeland Security. 8 U.S.C. § 1155 provides that he "may at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved under [8 U.S.C. § 1154]."  8 U.S.C. § 1155.  But contrary to Plaintiffs' contentions, 8 C.F.R. § 205.1(a) does not constitute an unlawful subdelegation of authority to the Secretary of State.

An unlawful subdelegation of decision-making authority occurs when discretionary authority or responsibility vested in one entity or official is transferred to a non-subordinate in the absence of some form of congressional approval.  *See U.S. Telecom Ass'n*, 359 F.3d at 565, 567 (distinguishing between "subdelegation of decision-making authority" and "legitimate outside party input into agency decision-making processes").  8 C.F.R. § 205.1(a), however, does not transfer any authority to anyone.  It provides that "[t]he approval of a petition or self-petition made under [8 U.S.C. 1154] . . . is revoked" in various situations, including "[i]f the Secretary of State shall terminate the registration of the beneficiary pursuant to the provisions of . . . [8 U.S.C. 1153(g)[.]"  8 C.F.R. § 205.1(a)(1).  Far from being a subdelegation of decision-making authority, § 205.1(a)(1) merely provides the *reason* for which the Secretary of Homeland Security exercises

his own discretionary authority to revoke an immigrant visa petition.  That reason being when a registration is terminated for failure to timely apply for a visa.  As noted above, the termination of a registration is an action for which the Secretary of State wields no discretion—it is an action mandated by Congress and 8 U.S.C. § 1153(g).  As such, the termination of a registration is more akin to an event than any exercise of discretion or decision-making authority.  Said differently, the Department of Homeland Security, through 8 C.F.R. § 205.1(a)(1), merely conditions the continued approval of an immigrant visa petition on the non-citizen's timely submittal of an application for an immigrant visa.  This is plainly permissible under the broad revocation authority provided by 8 U.S.C. § 1155 to revoke a petition for anything "he deems to be good and sufficient cause." [8]

Even if one could characterize the termination of a registration to be a "decision" by the Secretary of State, however, the Secretary of Homeland Security is permitted to condition his former approval on that "decision."  As the D.C. Circuit explained:

> a federal agency entrusted with broad discretion to permit or forbid certain activities may condition its grant of permission on the decision of another entity, such as a state, local, or tribal government, so long as there is a reasonable connection between the outside entity's decision and the federal agency's determination. Thus in *United States v. Matherson*, 367 F. Supp. 779, 782–83 (E.D.N.Y.1973), *aff'd* 493 F.2d 1339 (2d Cir.1974), the court upheld the decision of the Fire Island National Seashore Superintendent to condition issuance of federal seashore motor vehicle permits on the applicant's acquisition of an analogous permit from an adjacent town. And *Southern Pacific*, 700 F.2d at 556, citing *Matherson*, sustained the Secretary of Interior's conditioning of right-of-way permits across tribal lands on the tribal government's approval.

---

[8]     To the extent the Plaintiffs seek to challenge the specific basis for the revocation of any petition, such a challenge is barred.  *See iTech U.S., Inc. v. Renaud*, 5 F.4th 59, (D.C. Cir. 2021) (holding that "the decision to revoke an I-140 immigrant visa petition under section 1155" is unreviewable by virtue of 8 U.S.C. § 1252's jurisdictional bar); *Kondapally v. USCIS* , 557 F. Supp. 3d 10, 22 (D.D.C. 2021) (applying *iTech* and concluding that court lacked jurisdiction to hear challenge to revocation of immigrant visa petition).

*U.S. Telecom Ass'n*, 359 F.3d at 567.  Here, the Secretary of State and the Secretary of Homeland Security share responsibility for the application of the nation's immigration laws.  Whether a visa applicant has timely applied for an immigrant visa is obviously a relevant concern that the Secretary of Homeland security is permitted to adopt as an element of his own decision process.  Thus, conditioning his continued approval of immigrant visas on whether the applicant's registration has been terminated for failure to make a timely application does not run afoul of any principles of non-delegability.  *See id.*

## III.   To the Extent That Any Claims Survive, All Remaining Claims Should Be Severed.

To the extent that any claims survive Defendants' motion, the Court should sever Plaintiffs' individual claims, each of which turns on their own unique facts and circumstances.  As explained above, this is a mandamus action brought by 23 individual Plaintiffs who seek to compel the adjudication of various immigrant visa applications that they allegedly submitted to five U.S. Embassies or Consulates around the world between March 6 and October 29, 2019.  Each of the applications and each of the Plaintiffs present their own unique circumstances and therefore Plaintiffs' claims are not properly joined together in a single action and should be severed.

Federal Rule of Civil Procedure 21 provides the Court with broad discretion to "sever any claim against a party." Fed. R. Civ. P. 21; *see also M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 294 (D.D.C. 2018); *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 373 (D.D.C. 2016); *Spaeth v. Mich. St. Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 n.11 (D.D.C. 2012); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum . . . ."). If a claim is severed, the severed claim will proceed as a separate and independent cause of action and will result in a separate judgment. *M.M.M.*, 319 F. Supp. 3d at 294; *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283,

288 n.7 (D.D.C. 2014); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000)

("Under Rule 21 . . . severance creates two separate actions where previously there was but one.").

"In determining whether to join or sever claims, courts employ the permissive joinder requirements articulated in Rule 20(a), which permits claims to be joined if: 1) the claims arise from the same transaction or occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all plaintiffs arose in the action." *Pinson*, 74 F. Supp. 3d at 288 (citing Fed. R. Civ. P. 20(a)). "The determination of a motion to sever is within the discretion of the trial court." *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) (citation omitted). Under Rule 20(a), to satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related. *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C.2010) ("'[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'"). "The movant, however, cannot join parties 'who simply engaged in similar types of behavior . . . [but are] otherwise unrelated; some allegation of concerted action . . . is required.'" *Pinson*, 74 F. Supp. 3d at 289 (quoting *Spaeth*, 845 F. Supp. 2d at 53). The other prong of Rule 20(a) requires that "some common question of law or fact as to all of the plaintiffs' claims, [but] not that all legal and factual issues be common to all the plaintiffs." *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10–11 (D.D.C. 2004) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)).

Here, the Plaintiffs do not satisfy these requirements. Each of the 23 individual plaintiffs claims that different "consular officers at various U.S. embassies or consulate generals" have unreasonably delayed the adjudication of his or her immigrant visa application. *See* Am. Compl. ¶¶ 4-25. But the similarities end there. The plaintiffs filed their applications on different dates, and therefore their applications have been pending for different periods of time. And many of the

applications sit in different postures—whether the visas have already been issued, refused, registrations terminated, or whether the case still remains at the NVC.   Also, Plaintiffs' applications are, were, or will be handled at five different embassies or consulates around the world, each of which presents its own unique circumstances.   And some of the *TRAC* factors necessary to evaluate Plaintiffs' claims turn on circumstances that are unique to each of them— namely, the third and fifth factors, which concern any delay's "impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay."   *Liberty Fund*, 394 F. Supp. 2d at 118.   For these reasons, Plaintiffs' claims are not logically related, present different factual circumstances, and should be severed under Rule 21.

*       *       *

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should grant Defendants' motion and either dismiss Plaintiffs' claims or grant Defendants summary judgment.  Alternatively, to the extent that any claims survive this motion, each individual Plaintiff's remaining claims should be severed.  A proposed order is enclosed herewith.


Dated: February 10, 2023                    Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            D.C. Bar #481052
                                            United States Attorney

                                            BRIAN P. HUDAK
                                            Chief, Civil Division


                                            By:  _____ /s/ *Derek S. Hammond* _____
                                                DEREK S. HAMMOND,
                                                D.C. BAR No. 1017784
                                                Assistant United States Attorney
                                                601 D Street, NW
                                                Washington, DC 20530
                                                (202) 252-2511

                                            *Attorneys for the United States of America*