**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KATHERINE DANIELA PACHECO QUIROS, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 21-2433 (CKK) |
| MOLLY AMADOR, *Deputy Consul General and Visa Unit Chief, U.S. Embassy in Costa Rica*, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | = |

## TABLE OF CONTENTS

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO SEVER…………………………………………………………..5

I. COUNT I IS NOT MOOT AS TO GULSHAN KARIMOVA………………………….5

II. SUMMARY JUDGMENT OR DISMISSAL ON THE MERITS AS TO GULSHAN KARIMOVA IS PREMATURE WITHOUT DISCOVERY AS TO WHETHER THE DEFENDANT ABATE COMPLIED WITH THE FIRST IN FIRST OUT METHOD IN DECIDING MS. KARIMOVA'S VISA APPLICATION…………………………………..11

III. COUNT I IS NOT MOOT AS TO THE DAVILA ROMEROS………………………… 15

IV. SUMMARY JUDGMENT OR DISMISSAL ON THE MERITS IS PREMATURE WITHOUT DISCOVERY AS TO WHETHER THE DEFENDANT ABDEEN COMPLIED WITH THE FIRST IN FIRST OUT METHOD IN DECIDING THE DAVILA ROMEROS' VISA APPLICATIONS…………………………………………………………………… 17

V. SEVERANCE IS INAPPROPRIATE IN LIGHT OF THE COMMON ISSUE OF LAW ……………………………………………………………………………………..20

CONCLUSION……………………………………………………………………….20

# TABLE OF AUTHORITIES

**United States Codes**

5 U.S.C. § 706(1)………………………………………………………………………11
8 U.S.C. § 1104(a)…………………………………………………………………… 9
8 U.S.C. § 1153(g)……………………………………………………………………15
8 U.S.C. § 1201(a), (i), ……………………………………………………………… 9
8 U.S.C. § 1201(g)…………………………………………………………………… 9-11
8 U.S.C. § 1571(b)…………………………………………………………… 14, 19

**Statutes**

 INA § 221(g)…………………………………………………………………………10

**Code of Federal Regulations:**

FRCP
20(a)(1)(B)……………………………………………………………………………20

**Federal Cases**

*Afghan & Iraqi Allies v. Pompeo,*
    18-cv-01388 (TSC), 2019 U.S. Dist. LEXIS 14465, 2019 WL 367841 (D.D.C. Jan.30,
    2019) …………………………………………………………………………………8

*Aka v. Wash. Hosp. Ctr.*,
    116 F.3d 876 (D.C. Cir.
1997)………………………………………………………………………..……………7

* *Al-Gharawy v. Dep't of Homeland Sec.*,
    Civ. A. No. 21-1521 (RDM), 2022 WL 2966333, 2022 U.S. Dist. LEXIS 133589  (D.D.C.
    July 27, 2022)………………………………………………………………6, 7, 9

*Baan Rao Thai Rest. v. Pompeo,*
    985 F.3d 1020  (D.C. Cir. 2021)………………………………………………………5-8

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
    543 U.S. 157 (2004) (internal citation omitted)……………………………………8

*Doe v. Fed. Democratic Republic of Ethiopia,*
    851 F.3d 7 (D.C. Cir.
2017)………………………………………………………………………………..7

*Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury,*
    545 F.3d 4, 383 U.S. App. D.C. 223 (D.C. Cir. 2008)………………………………14, 19

*Gersman v. Grp. Health Ass'n,*
 975 F.2d 886 (D.C. Cir. 1992)……………………………………………………………7

*Ghadami v. United States Dep't of Homeland Sec.,*
 No. 19-cv-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623, 2020 WL 1308376, (D.D.C. Mar. 19,
2020)……………………………………………………………………………………8

*Ibrahim v. United States Dep't of State,*
 Civil Action No. 19-610 (BAH), 2020 U.S. Dist. LEXIS 61753, (D.D.C. Apr. 8, 2020)…...9

*In re Am. Rivers & Idaho Rivers United,*
 372 F.3d 413 (D.C. Cir 2004)……………………………………………………………13

*In re Core Commc'ns, Inc.,*
 531 F.3d 849 (D.C. Cir. 2008)…………………………………………………………11, 18

*In re Pub. Emples.,*
 446 U.S. App. D.C. 375, 382, 957 F.3d 267 (2020)………………………………...……13

*In re United Mine Workers of Am. Int'l Union,*
 190 F.3d 545 (D.C. Cir. 1999)……………………………………………………….…11, 17

*Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.,*
 Civil Action No. 21-1521 (RDM), 2022 U.S. Dist. LEXIS 133589, __ F.Supp.3d __ | 2022
WL 2966333 (D.D.C. July 27, 2022)……………………………………………...……6

\* *Memon v. Blinken,*
 Civil Action No. 22-0754 (CKK), 2023 U.S. Dist. LEXIS 17016,  2023 WL 1438396
(D.D.C. Feb. 1, 2023)………...………………………………………………11, 17, 18

*Mokkapati v. Mayorkas,*
 Civil Action No. 21-cv-1195 (BAH), 2022 U.S. Dist. LEXIS 127994, (D.D.C. July 19,
2022)…………………………………………………………………………...…12, 19

*Nat'l Ass'n of Mfrs. v. SEC,*
 800 F.3d 518, 419 U.S. App. D.C. 158 (D.C. Cir. 2015)………………………………14, 19

*Nibber v. U.S. Citizenship & Immigration Servs.,*
 Civil Action No. 20-3207 (BAH), 2020 U.S. Dist. LEXIS 235099, (D.D.C. Dec. 15,
2020)………………………...……………………………………………………14, 19

\* *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry,*
 168 F. Supp. 3d 268 (D.D.C. 2016) ……………………………………………...……6

*Patel v. Reno,*
 134 F.3d 929 (9th Cir. 1997) ……………………………………………………...…7

\* *Potomac Elec. Power Co. v. Interstate Commerce Com.,*
 702 F.2d 1026 (D.C. Cir. 1983)………………………………………………………11

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 ( D.C.  Cir. 1999). ……………….....………………………………6, 8, 9

\*   *Smith v. Berryhill*,
    139 S. Ct. 1765 (2019)………………………………………………………………10

\*   *Telecommunications Research & Action Center v. FCC* ("TRAC"),
    750 F.2d 70, 80, 242 U.S. App. D.C. 222 (D.C. Cir. 1984)……………………………11, 17

*United States v. Philip Morris USA Inc.*,
    364 U.S. App. D.C. 454, 396 F.3d 1190 (D.C. Cir.)………………………………………..7

\*   *United States v. Sheffield*,
    832 F.3d 296 (D.C. Cir. 2016) …………………………………………………………8

*Vulupala v. Barr*,
    438 F. Supp. 3d 93 (D.D.C. 2020)……………………….....………………………………8

**Treatises**

BALLENTINE'S LAW DICTIONARY 346 (3d ed. 1969)……………………………………7

Merriam-Webster's Collegiate Dictionary 469 (11th ed. 2011)………………………………10

4 Oxford English Dictionary 222 (1933)……………………….....………………………………10

5 Oxford English Dictionary 920 (2d ed. 1989) ………………………………………....…10

\* The Law of Judicial Precedent 44 (2016)……………………………………..……………8

Webster's New World College Dictionary 542 (5th ed. 2016) ………………………………10

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO SEVER**

Plaintiffs agree that Counts II, III and IV of the First Amended Complaint are moot. Count I however is not moot as to plaintiffs GULSHAN KARIMOVA, ÁLVARO JOSÉ DÁVILA RIVERO, MARIELA CAROLINA SIERRA FRANCESCHI, NICOLE CAROLINA DÁVILA SIERRA, ÁLVARO SANTIAGO JOSÉ DÁVILA SIERRA and EMMA VICTORIA DÁVILA SIERRA CARTAYA

I.       COUNT I IS NOT MOOT AS TO GULSHAN KARIMOVA

The Defendants argue that "[t]he visa application[] for Ms. Karimova ha[s] already been refused and therefore the doctrine of consular non-reviewability bars claims based on [her] application[]." Defendants' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO SEVER (Defs.' Mem.) at 13.

In so moving, the Defendants rely primarily upon the word "withhold" in the following excerpt from *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), "[c]onsular nonreviewability shields a consular officer's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024.

However, the Court of Appeals' use of this single word in a decision which is fundamentally unrelated to the issues before this Court, which were neither argued nor decided there, is not merely *dicta*, but in fact irrelevant. *Baan Rao* involved a garden-variety action under the Administrative Procedure Act to seek judicial review of a final decision on the merits by a United States consular official to "den[y]", *id.* at 1023, an E-2 visa to two Thai nationals. There was no dispute that a visa decision had in fact occurred and nowhere did the appellants ask the court to

order the consular officer to make a decision but, rather, sought judicial review of the decisions that were made.

Nevertheless, "Defendants seize on the D.C. Circuit's use of the word 'withhold.'", *Marwah Al Ihsan Al-Gharawy v. U.S. Dep't of Homeland Sec.*, Civil Action No. 21-1521 (RDM), 2022 U.S. Dist. LEXIS 133589, at *24, __ F.Supp.3d __ | 2022 WL 2966333 (D.D.C. July 27, 2022), to attempt to extend *Baan Rao* to an issue neither before nor considered by that court. The Defendants effectively argue that any failure by a consular officer to issue a visa to an applicant amounts to a decision to "withhold" the visa and therefore is unreviewable. This very strained reading is  neither controlling, or even relevant here for at least five reasons.

First, not only is this language of *Baan Rao* not new, but the interpretation assigned to it by the Defendants has already been rejected at least twice by this Court. As *Baan Rao* itself notes, *id.* at 1024, this use of the word "withhold" appeared previously in *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 ( D.C.  Cir. 1999).  *Al-Gharawy,* 2022 U.S. Dist. LEXIS 133589, at *25-26. Not only did this language not dissuade at least five judges of this Court from subsequently finding that they had the authority to compel a consular official to adjudicate a visa application, *see infra*, but it was in fact relied upon by at least one of them to show that cases finding no such authority to be "unpersuasive given our Court of Appeals' characterization of the doctrine as applicable to 'a consular official's decision to issue or withhold a visa' rather than the failure to make a decision at all. Saavedra Bruno, 197 F. 3d at 1159 (emphasis added)." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 291 n.21 (D.D.C. 2016) (emphasis included). The Defendants do not acknowledge, much less rebut, *Nine Iraqi Allies'* refutation of their interpretation of the language of *Saavedra Bruno* which is merely repeated in *Baan Rao*.

Second, it is unreasonable to suppose that the Court of Appeals in any way intended its use of the word "withhold" in *Baan Rao* to bar actions to compel decisions by consular officers on visa applications. Not only is it highly unlikely that the court would have simply overruled numerous

decisions from this circuit[1] and elsewhere (merely by repeating language from a previous decision) without so much as alluding to them, even indirectly, *See  Al-Gharawy* , 2022 U.S. Dist. LEXIS 133589, at *25, the idea that it would create a circuit split without even referring to it strains credulity.[2] See *United States v. Philip Morris USA Inc.*, 364 U.S. App. D.C. 454, 396 F.3d 1190, 1201 (D.C. Cir.) ("[W]e avoid creating circuit splits when possible . . . ."), *cert. denied*, 546 U.S. 960 (2005).

Here the 9th Circuit has held that " we find that the consulate had a duty to act and that to date, eight years after application of the visas, the consulate has failed to act in accordance with that duty and the writ (of mandamus) should issue." *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997) (Parenthetical material added). It would create a circuit split in light of *Patel* if our Court of Appeals held that the courts have no authority to compel a consulate to decide a visa application on the theory that its failure to make a final decision amounted to a non-reviewable decision to "withhold" a visa.

Third, such a holding, even if intended, would be *dicta* (or *dictum*). *See  Al-Gharawy* , 2022 U.S. Dist. LEXIS 133589, at *25. As noted, there was no claim in *Baan Rao* that the consulate unreasonably delayed a decision on the visa applications and no request that the court order it to decide them. Indeed, the court itself characterized the decisions it was reviewing as "denied" visa applications, not decisions to "withhold" them. *Id*. at 1023,  "The term *dictum* refers to 'an expression in an opinion which is not necessary to support the decision reached by the court.'" *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 894 n.11 (D.C. Cir. 1997) (quoting BALLENTINE'S LAW DICTIONARY 346 (3d ed. 1969)). "Binding circuit law comes only from the holdings of  a prior panel, not from its dicta." *Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017), quoting *Gersman v. Grp. Health Ass'n*, 975 F.2d 886, 897 (D.C. Cir. 1992). Reading the reference to the word "withhold" as invited by the Defendants to include cases in which a consular

---

[1] *See infra*

[2]  "In opinions addressing a matter of first impression in a circuit, the court will ordinarily set forth the relevant law in the other circuits." Garner, at 512.

officer has not made a final decision to deny or grant a visa would not be necessary to support the decision reached by the Court of Appeals in *Baan Rao* and therefore would be *dicta*.

Fourth, even if not *dicta*, the Defendants' claimed reading of the word "withhold" in *Baan Rao* is not precedent because the issue of whether a court can order a consular official to decide a case which has been nominally, but not finally, refused, was never addressed in that decision. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *United States v. Sheffield*, 832 F.3d 296, 308 n.3 (D.C. Cir. 2016) (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (internal citation omitted)); Bryan A. Garner et al., *The Law of Judicial Precedent* 44 (2016) (cases are only "precedent" for "legal questions actually presented to and decided by the court").

Finally, as noted above, both *Saavedra Bruno* and *Baan Rao*'s use of the word "withhold" is irrelevant to the instant controversy because in both instances the Court of Appeals was referring to a consular officer's decision to issue or withhold a visa rather than a failure to make a decision at all.

Accordingly, *Baan Rao* should play no role in this Court's decision.

Without *Baan Rao*, Defendants are reduced to arguing that this Court should follow cases decided by district courts in the Second Circuit, rather than the numerous decisions of this Court holding that it does have authority to compel consulates to decide visa applications which have been unreasonably delayed. *See, e.g.*, *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 95-96 (D.D.C. 2020) (concluding that doctrine of consular nonreviewability did not apply to review of application in "administrative processing"); *Afghan & Iraqi Allies v. Pompeo*, 18-cv-01388 (TSC), 2019 U.S. Dist. LEXIS 14465, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019) ("[A]dministrative processing is not a final adjudication but a mandatory intermediate step."); *Nine Iraqi Allies*, 168 F. Supp. 3d at 287 ("[A]ny

Plaintiff with an application in 'administrative processing' has not yet received a final decision."); *Ibrahim v. United States Dep't of State*, Civil Action No. 19-610 (BAH), 2020 U.S. Dist. LEXIS 61753, (D.D.C. Apr. 8, 2020), and *Al-Gharawy v. Dep't of Homeland Sec*., Civ. A. No. 21-1521 (RDM), 2022 WL 2966333, at *6, 2022 U.S. Dist. LEXIS 133589 (D.D.C. July 27, 2022).

The Defendants respectfully disagree with these holdings, first arguing that all but *Al-Gharawy "*fail to grapple with the judiciary's diverging views on the central issue here—i.e., does the consular non-reviewability doctrine contain an exception that allows the Court to compel a consular officer to reach another decision on a visa application after they have refused it?" Defs' Mem. at 15, and then disputing *Al-Gharawy* itself. *Id* at 15-17. However, the Defendants' mischaracterize the issue as whether consular non-reviewabilty has an exception for orders to compel decisions – the issue instead is whether the doctrine applies to the authority of the court to compel actions on decisions unreasonably delayed at all.

Contrary to the Defendants, no support for such a rule can be found in the portions of the INA cited by our Circuit as evidence for the doctrine of consular non-reviewability in *Saavedra Bruno,* 197 F.3d at 1156.  8 U.S.C. § 1104(a) says that the power of the Secretary of State does not extend to " powers, duties, and functions conferred upon the <u>consular officers</u> relating to the granting or refusal of visas" but doesn't limit the powers of the courts to compel decisions on visa applications. Neither does 8 U.S.C. § 1201(a) or (i), and, of course, as explained above, neither do the decisions of this Circuit's Court of Appeal. And while the Defendants continue to insist that by refusing Ms. Karimova's visa application under 8 U.S.C. § 1201(g), the consular official has adjudicated it,  this Court has repeatedly, and comprehensively rejected this argument. E.g.,  *Nine Iraqi Allies,* 168 F. Supp. 3d at 282-88, and  *Al-Gharawy* 2022 U.S. Dist. LEXIS 133589, at *26-30, containing arguments which Ms. Karimova adopts by reference. Further, any claim that a final decision has been made in Ms. Karimova's application is unequivocally rebutted by Exhibit A, in which the Consular Section, U.S. Embassy Tbilisi, Georgia, unambiguously informed her less than five months ago that despite her purported "refusal" under 8 U.S.C. § 1201(g), a decision still was

to be made on her application[3] and that the adjudication of her application was yet to be completed.[4]

Nor is it true that a decision under § 1201(g) remains final unless superseded by another decision, since it was never final to begin with. To quote no less an authority than the United States Supreme Court, "'final decision' clearly denotes some kind of terminal event" *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019). It further elaborates upon this definition as follows:  "5 Oxford English Dictionary 920 (2d ed. 1989) (Final: "Marking the last stage of a process; leaving nothing to be looked for or expected; ultimate"); 4 Oxford English Dictionary 222 (1933) (same); see also Webster's New World College Dictionary 542 (5th ed. 2016) (Final: "leaving no further chance for action, discussion, or change; deciding; conclusive"); Merriam-Webster's Collegiate Dictionary 469 (11th ed. 2011) (Final: "coming at the end: being the last in a series, process, or progress")." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 n.8 (2019).  As this Court demonstrated at length in *Nine Iraqi Allies*, there is nothing terminal about a refusal of a visa for the purpose of placing it in administrative processing, and, obviously, there was nothing terminal about the refusal of Ms. Karimova's visa when the consulate was in fact telling her to wait for a future decision or adjudication, but it merely signified a step on the road to a final decision, which the Consular Section has advised Ms. Karimova she is awaiting now.[5]

Accordingly, an INA § 221(g) refusal is in fact a "temporary" or "passive" refusal, at least in Ms. Karimova's case, as well that of the plaintiffs in *Nine Iraqi Allies*, because in both cases it was made very clear that the consulate intended to make another decision in their cases later.

---

[3] "A *decision* on this case cannot be made until the Consular Section finishes its review." Exhibit A, emphasis supplied.

[4] "[W]e cannot predict when the *adjudication* of the application will be completed, please be assured that we are aware of your concerns and will do all we can to see that the application is *adjudicated* as soon as the administrative processing has been completed." *Id*., emphasis supplied.

[5] A patient told he has a "terminal illness" will seldom understand it to mean that he has a disease which may or may not be cured in the future depending upon the outcome of further investigation by the physician. "Terminal" doesn't mean "we can't cure you right now but we might be able to in the future, so just be patient." It means "you are going to die soon and there's nothing we can do about it.".

Finally, even if a § 1201(g) reflects a  determination by a consular officer that the noncitizen is ineligible to receive a visa, it certainly did not constitute a "final resolution" of the visa applications in *Nine Iraqi Allies*, nor here,  and so this Court has the authority under 5 U.S.C. § 706(1) to order a prompt final resolution of a matter unreasonably delayed. *Potomac Elec. Power Co. v. Interstate Commerce Com.*, 702 F.2d 1026, 1028 (D.C. Cir. 1983). Nothing in the doctrine of consular non-reviewability is to the contrary.

Accordingly, Count I is not moot as it pertains to GULSHAN KARIMOVA

## II. SUMMARY JUDGMENT OR DISMISSAL ON THE MERITS AS TO GULSHAN KARIMOVA IS PREMATURE WITHOUT DISCOVERY AS TO WHETHER THE DEFENDANT ABATE COMPLIED WITH THE FIRST IN FIRST OUT METHOD IN DECIDING MS. KARIMOVA'S VISA APPLICATION

To determine whether Plaintiffs have sufficiently alleged that agency action has been "unreasonably delayed," the Court applies the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 80, 242 U.S. App. D.C. 222 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Memon v. Blinken*, Civil Action No. 22-0754 (CKK), 2023 U.S. Dist. LEXIS 17016, at *3-4, 2023 WL 1438396 (D.D.C. Feb. 1, 2023), quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999).

"The D.C. Circuit has explained that the first TRAC factor—the time agencies take to make decisions must be governed by a 'rule of reason'—is the 'most important,' although it is generally reviewed with the second TRAC factor as well." *Memon*, 2023 U.S. Dist. LEXIS 17016, at *4, quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). "In general, courts in this jurisdiction have regularly found that the Government applies a 'rule of reason' to the review of

visa petitions by adjudicating applications in the order they were filed. ... Simply put, the inquiry begins and ends with Defendant's consistent application of the 'first-in, first-out' methodology." *Memon,* 2023 U.S. Dist. LEXIS 17016, at *4-5.

Here, while discovery is needed to conclusively establish whether the Defendant Kathryn Abate applied the First-In First Out rule in considering Ms. Karimova's visa application, it can be easily discerned even on the present meager record that she almost certainly did not. According to the Defendants " Personal appearance at an interview is required for the applicant to execute a visa application" Defs. Mem. at 19.  Accordingly, Ms. Karimova must have applied for a visa when she was interviewed on January 22, 2020. Peterman Declaration at ¶16. Unless one is to make the extraordinary  assumption that virtually no immigrant visa applicants who have been interviewed since January 22, 2020 were issued visas, it is certain that one or more (most likely many, many more) visa applicants who applied after Ms. Karimova have received final decisions on their visa applications before her.

Therefore it is a virtual certainty that Ms. Karimova's application was not processed according to the "First In First Out" method and that, had it been, she would have already received a final decision on her visa application by now. Accordingly, it appears extremely likely that the rule of reason— the "most important factor", weighs heavily in favor of Ms. Karimova. Nevertheless, should the government actually dispute this point – and it is hard to imagine how it could– then at the very least Ms. Karimova is entitled to discovery on this issue. While it has been commented that "the majority view in this District is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." *Mokkapati v. Mayorkas*, Civil Action No. 21-cv-1195 (BAH), 2022 U.S. Dist. LEXIS 127994, at *10 n.4 (D.D.C. July 19, 2022), so unlikely are the assumptions necessary to refute a claim of unreasonable delay here – at least in regards to the most important factor, that it cannot be reasonably disputed that the plaintiffs have, at the very least, provided a plausible claim

of unreasonable delay, particularly since, as we will show, 3 of the remaining five TRAC factors tip sharply in Ms. Karimova's favor as well.

While Defendants claim that the "rule of reason" weighs in their favor, they do so only by entirely disregarding the First-In First Out rule, even though the  inquiry begins and ends with the consistent (or inconsistent) application of the same.. Rather they point out that "[b]ecause Congress has established no firm timetable for consular officials to adjudicate or re-adjudicate the visa applications at issue here, the Court must determine whether the applications have been pending for an unreasonable amount of time as established by case law.". Defs.' Memo at 18. Well, true enough, but in fact the caselaw shows that, again, the inquiry begins and ends with the First In First Out Rule. And while the Defendants cite a number of cases which simply measure the time that the visa applications were pending in terms of years, none of them appear to even mention the First In, First Out rule, and therefore can hardly serve as useful precedents. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Sheffield*, 832 F.3d 296, 308 n.3,  *Garner* et al.,  (cases are only "precedent" for "legal questions actually presented to and decided by the court").[6]

Here it is highly likely – in fact, virtually inescapable – that Defendant Abate (and/or her predecessor(s)) did not follow the First In, First Out rule in adjudicating Ms. Karimova's visa application, and therefore the most important TRAC factor weighs heavily in her favor. But if the Defendants seriously maintain that few or no foreign nationals who applied for visas after Ms. Karimova at the U.S. Embassy in Georgia (that is after January 22, 2020),  have received final decisions on their applications for immigrant visas, then the plaintiffs should be permitted discovery on this remarkable assertion before a decision is made on this TRAC factor.

---

[6] Further, they all appear inconsistent with this Circuit's recent statement that a "reasonable time for agency action is typically counted in weeks or months, not years." *In re Pub. Emples.*, 446 U.S. App. D.C. 375, 382, 957 F.3d 267, 274 (2020), quoting  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir 2004) (internal quotation marks omitted).

The remaining TRAC factors also weigh sharply in Ms. Karimova's favor or are at worst

neutral. They are:

Factor (2): Congress has provided an indication of the speed with which it expects the

agency to proceed in the enabling statute, to wit, 8 U.S.C. § 1571(b), providing that the processing

of an immigration benefit application should be completed not later than 180 days after the initial

filing of the application.

> Although the D.C. Circuit has noted that a "sense of Congress" preamble may be
> "precatory" or "non-binding," and is best treated "not as a statement of fact but [as] a
> statement of opinion," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26, 419 U.S. App.
> D.C. 158 (D.C. Cir. 2015) (citing *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of
> Treasury*, 545 F.3d 4, 14 n.6, 383 U.S. App. D.C. 223 (D.C. Cir. 2008)), the
> second *TRAC* factor requires only some "indication of the speed with which [Congress]
> expects the agency to proceed," not a mandatory statutory timeline, *TRAC*, 750 F.2d at 80.
> Section 1571(b).

*Nibber v. U.S. Citizenship & Immigration Servs.*, Civil Action No. 20-3207 (BAH), 2020

U.S. Dist. LEXIS 235099, at *16 (D.D.C. Dec. 15, 2020).

Factors (3) & 5: Ms. Karimonva's health and welfare is very much at stake here. She is a

national and resident of Azerbaijan. As recently as 2020 the region was the site of intensive

fighting involving Azerbaijan, Armenia, and Armenia-supported separatists.  Sporadic incidents of

violence along the undelimited international border between the two countries and some other areas

during the year resulted  in casualties and detentions.  There were credible reports that Azerbaijani

and ethnic Armenian forces engaged in unlawful killings, torture, and other cruel, inhuman, or

degrading treatment during, and in some cases after, the November 2020 fighting. AZERBAIJAN

2021 HUMAN RIGHTS REPORT (pdf version) at 1.

https://www.state.gov/wpcontent/uploads/2022/03/313615_AZERBAIJAN-2021-HUMAN-

RIGHTS-REPORT.pdf

Further, as a woman in Azerbaijan, Ms. Karimova suffers from systematic discrimination.

*Id.* at 43-44. Clearly these factors weigh heavily in Ms. Karimova's favor.

Factors 4 and 6 however are neutral. There does not appear to be any agency activities of a

higher or competing priority which adjudicating Ms. Karimov's application would affect, inasmuch

as all she is asking is that the Consulate process her application according to the First In and First

Out system that presumably is at least nominally already in place. Likewise Factor 6 is neutral.

Inasmuch as 4 of the TRAC factors, including the most important one, appear to tip sharply

towards Ms. Karimova, or at least 3 of them do and she has shown it is highly likely that the fourth

– the rule of reason – does as well,  while the remaining are neutral, therefore application of the

TRAC factors certainly doesn't support the Defendant's motion for summary judgment.  To the

extent that there is any doubt that the Rule of Reason favors Ms. Karimova, she should be given the

opportunity to take discovery to determine whether Ms. Abate has been adhering to the First In

First Out rule.

### III.  COUNT I IS NOT MOOT AS TO THE DAVILA ROMEROS

Neither is Count I moot as to plaintiffs, ÁLVARO JOSÉ DÁVILA RIVERO, MARIELA

CAROLINA SIERRA FRANCESCHI, NICOLE CAROLINA DÁVILA SIERRA, ÁLVARO

SANTIAGO JOSÉ DÁVILA SIERRA and EMMA VICTORIA DÁVILA SIERRA CARTAYA

(the DAVILA RIVEROs) in that contrary to the claims of the Defendants, they have identified no

credible evidence that their applications for immigrant visas have been properly terminated by the

Secretary of State.

The Defendants' claim that this Count is moot as to DAVILA RIVEROs is premised upon

the assertion that their immigrant visa registrations were properly terminated, Defs.' Mem at 19,

presumably pursuant to 8 U.S.C. § 1153(g), which provides in relevant part that "The Secretary of

State shall terminate the registration of any alien who fails to apply for an immigrant visa within

one year following notification to the alien of the availability of such visa.". However, none of the

Defendants STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE

ISSUE include an express claim that any of the Davila Riveros were in fact ever notified of the

availability of an immigrant visa. But even assuming that they were so notified on September 11,

2019, the date Mr. Davila Rivero's case became documentarily qualified, the Declaration of

Christina Valdes (the Valdes Declaration) shows that the Davila Romeros' attempted to follow the instructions provided them by the consulate for scheduling a new interview but were unable to do so.

Specifically, on October 22, 2019, U.S. Embassy Colombia provided A. Davila Rivero's legal counsel what purported to be instructions for applying for an immigrant visa interview. Valdes Declaration at 8-9. Between November 7, 2019 and February 19, 2020 said counsel continuously attempted to follow the instructions provided by the Embassy but were unable to schedule an immigrant visa interview by following those instructions. Valdes Declaration at 4-6. On February 25, 2020 counsel received the following reply from the Embassy: "Please inform a tentative date for your interview, please pick a date for the second half of March 2020 and we will respond informing if the appointment is schedule or if you need to choose a different date." Valdes Declaration at 3-4. Accordingly, the Davila Romeros, through their counsel, informed the consulate on March 2, 2020 that "Our client , Mr. Alvaro Davila Rivero, selects Tuesday, March 31, 2020, as his interview date.". Valdes Declaration at 2-3. However, Counsel then  received the following response on March 24, 2020:

> Please read the information about the cancellation of all visa appointments in the United States Embassy in Bogotá: https://co.usembassy.gov/es/alerta-cancelacion-de-citas-no-urgentes-paravisas-de-no-inmigrante/
>
> We will resume routine visa services as soon as possible, but cannot provide a specific date at this time.

Valdes Declaration at 2.

The Davila Riveros' counsel never received any further communication from the consulate regarding this matter.  Valdes Declaration at 0. Neither did Mr. Alvaro Davila Rivero. *Id.* at 11-14.

Not only does this evidence show that the Davila Romeros did in fact do everything in their power to apply for an immigrant visa within a year of becoming documentarily qualified for the same, but that the Peterman Declaration is unreliable to the extent it purports to be based upon Department of State records, inasmuch as those records are manifestly unreliable, in that although it

is stated that "State Department has no record of a response from Mr. Davila Rivero or his counsel." Peterman Decl. ¶ 39, on March 24, 2020 a State Department representative responded directly to the email sent by Davila Romeros' counsel on March 2, 2020. Valdes Declaration at 2. Accordingly, any other assertions contained in the Perterman Declaration regarding correspondence with the Davila Romeros (except to the extent it is corroborated by the Valdes Declaration)  should be disregarded, inasmuch as it apparently relies upon demonstrably unreliable State Department records.

Therefore, inasmuch as the record contains no evidence the Davila Romeros were ever notified of the availability of an immigrant visa, and if they were, it shows that they made every reasonable effort to apply for an immigrant visa, and were prevented from doing so by the consulate, therefore there is no evidence to support the claim that their visa registration was properly terminated and so Count I of the First Amended Complaint is not moot as to them.

IV.     SUMMARY JUDGMENT OR DISMISSAL ON THE MERITS IS PREMATURE WITHOUT DISCOVERY AS TO WHETHER THE DEFENDANT ABDEEN COMPLIED WITH THE FIRST IN FIRST OUT METHOD IN DECIDING THE DAVILA ROMEROS' VISA APPLICATIONS

To determine whether Plaintiffs have sufficiently alleged that agency action has been "unreasonably delayed," the Court applies the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 80, 242 U.S. App. D.C. 222 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Memon v. Blinken*, Civil Action No. 22-0754 (CKK), 2023 U.S. Dist. LEXIS 17016, at *3-4, 2023 WL 1438396 (D.D.C. Feb. 1, 2023), quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999).

"The D.C. Circuit has explained that the first TRAC factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second TRAC factor as well." *Memon* , 2023 U.S. Dist. LEXIS 17016, at *4, quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). "In general, courts in this jurisdiction have regularly found that the Government applies a 'rule of reason' to the review of visa petitions by adjudicating applications in the order they were filed. ... Simply put, the inquiry begins and ends with Defendant's consistent application of the 'first-in, first-out' methodology." *Memon,* 2023 U.S. Dist. LEXIS 17016, at *4-5.

Here, while discovery is needed to conclusively establish whether the Defendant Deanna Abdeen applied the First-In First Out rule in considering the Davilla Romeros' visa applications, it can be easily discerned even on the present meager record that she almost certainly did not. According to the Defendants "Personal appearance at an interview is required for the applicant to execute a visa application" Defs. Mem. at 19.  Accordingly, the Davilla Romeros' did everything in their power to apply for a visa on November 7, 2019, but were prevented from doing so by the Defendants. Unless one is to make the extraordinary  assumption that virtually no immigrant visa applicants who have been interviewed since November 7, 2019 were issued visas, it is certain that one or more (most likely many, many more) visa applicants who applied after the Davila Romeros became eligible for immigrant visas were issued visas

Therefore it is a virtual certainty that the Davila Romeros' applications were not processed according to the "First In First Out" method due to the Consulate's actions, and that, had they been, they would have already received a final decision on  their visa application by now. Accordingly, it appears extremely likely that the rule of reason— the "most important factor", weighs heavily in favor of the Davila Romeros. Nevertheless, should the government actually dispute this point – and it is hard to imagine how it could– then at the very least the Davila Romeros' are entitled to discovery on this issue. While it has been commented that "the majority view in this District is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged

do not support a plausible claim of unreasonable delay." *Mokkapati v. Mayorkas*, Civil Action No. 21-cv-1195 (BAH), 2022 U.S. Dist. LEXIS 127994, at *10 n.4 (D.D.C. July 19, 2022), so unlikely are the assumptions necessary to refute a claim of unreasonable delay here – at least in regards to the most important factor, that it cannot be reasonably disputed that the plaintiffs have, at the very least, provided a plausible claim of unreasonable delay, particularly since, as we will show, 3 of the remaining five TRAC factors tip sharply in the Davila Romeros' favor as well.

The remaining TRAC factors also weigh in the Davila Romeros' favor or are at worst neutral. They are:

Factor (2): Congress has provided an indication of the speed with which it expects the agency to proceed in the enabling statute, to wit, 8 U.S.C. § 1571(b), providing that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.

> Although the D.C. Circuit has noted that a "sense of Congress" preamble may be "precatory" or "non-binding," and is best treated "not as a statement of fact but [as] a statement of opinion," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26, 419 U.S. App. D.C. 158 (D.C. Cir. 2015) (citing *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 14 n.6, 383 U.S. App. D.C. 223 (D.C. Cir. 2008)), the second *TRAC* factor requires only some "indication of the speed with which [Congress] expects the agency to proceed," not a mandatory statutory timeline, *TRAC*, 750 F.2d at 80. Section 1571(b).

*Nibber v. U.S. Citizenship & Immigration Servs.*, Civil Action No. 20-3207 (BAH), 2020 U.S. Dist. LEXIS 235099, at *16 (D.D.C. Dec. 15, 2020).

Factors (3) & 5: the Davila Romeros' health and welfare is very much at stake here. The Department of State itself paints an incredibly bleak portrait of the state of human rights in Venezuela. See U.S. Department of State, 2021 Country Reports on Human Rights Practices: Venezuela, Executive Summary**, https://www.state.gov/reports/2021-country-reports-on-human-rights-practices/venezuela/ (**last accessed March 16, 2023). No could one read this summary without concluding that the Davila Romoeros' health and welfare are in danger as long as they remain in Venezuela. In fact, this is why the U.S. has granted Temporary Protected Status to the Venezuelans already here. USCIS, Temporary Protected Status Designated Country: Venezuela, https://www.uscis.gov/humanitarian/temporary-

protected-status/temporary-protected-status-designated-country-venezuela (last accessed March 16, 2023).

Factors 4 and 6 however are neutral. There does not appear to be any agency activities of a higher or competing priority which adjudicating the Davila Romeros' application would affect, inasmuch as all she is asking is that the Consulate process her application according to the First In and First Out system that presumably is at least nominally already in place. Likewise Factor 6 is neutral.

Inasmuch as 4 of the TRAC factors, including the most important one, appear to tip sharply towards the Davila Romeros, or at least 3 of them do and she has shown it is highly likely that the fourth – the rule of reason – does as well,  while the remaining are neutral, therefore application of the TRAC factors certainly doesn't support the Defendant's motion for summary judgment.

V.      SEVERANCE IS INAPPROPRIATE IN LIGHT OF THE COMMON ISSUE OF LAW

Given that the Defendants do not appear to agree with Plaintiffs that the First In First Out rule is the applicable rule of reason to be applied in each of the remaining Plaintiffs cases, this is a common issue of law among all parties, and, accordingly, severance is inappropriate, particularly this late in this litigation. FRCP 20(a)(1)(B).

**CONCLUSION**

The Defendants' motions should be denied in so far as they pertain to  Count I of the First Amended Complaint as it pertains to Gulshan Karimova and Alvaro Davila Romero and his derivatives.

Dated this 17th day of March, 2023

s/ Michael E. Piston
Michael E. Piston (MI 002)
Transnational Legal Services P.C.
Attorney for the Plaintiffs
1955 W. Hamlin Rd. Ste 100

Rochester Hills, MI 48039
Phone: 646-876-3772
Fx: 206-770-6350
Email: michaelpiston4@gmail.com