### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

KATHERINE DANIELA PACHECO
QUIROS, *et al.*,

      Plaintiffs,

   v.

MOLLY AMADOR, *et al.*,

      Defendants.

Civil Action No. 21-02433 (CKK)

---

### MEMORANDUM OPINION
(July 6, 2023)

In this action, twenty-three Plaintiffs sought injunctive and mandamus relief ordering officials of the United States Department of State ("State Department"), the Secretary of the United States Department of Homeland Security ("DHS"), and the United States Department of Justice ("DOJ") to act on and grant their immigration visa applications and set aside various State Department policies and regulations.

Now pending before the Court is Defendants' [27] Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), in which they also move for summary judgment under Rule 56 and, in the alternative, to sever Plaintiffs' claims under Rule 21. Upon consideration of the briefing[1], the relevant authorities, and the record as a whole, the Court will **GRANT** Defendants' Motion and **DISMISS** Plaintiffs' [15] Amended Complaint in its entirety. As Plaintiffs consent to their dismissal, the Court shall dismiss Counts II, III, and IV, and Count I as to all Plaintiffs but Gulshan Karimova and the A. Davila Rivero Family. The

---

[1] The Court's consideration has focused on Defendants' Motion to Dismiss (Defs.' Mot. to Dismiss), ECF No. 27; Plaintiff's Memorandum In Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n."), ECF No. 30; Defendants' Reply in Support of the Motion to Dismiss (Defs.' Reply), ECF No. 31; and Plaintiffs' Amended Complaint (Am. Compl.), ECF No. 15.

Court shall dismiss Count I of the Amended Complaint as to Gulshan Karimova and the A. Davila Rivero Family on the merits. The Court will **DENY AS MOOT** Defendants' Motion in so far as Defendants move for summary judgment and to sever Plaintiffs' claims.

## I.   BACKGROUND

### A.  Procedural History

Plaintiffs initiated this lawsuit in September 2019 and filed an Amended Complaint on December 18, 2021. Through this action, Plaintiffs seek to compel the Government to decide their various requests for immigrant visas. *See generally* Am. Compl.

Defendants filed the pending Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and also moved for summary judgment. Defs.' Mot. at 1. They also moved, in the alternative, to sever Plaintiffs' claims under Federal Rule of Civil Procedure 21. *Id.*

This Motion is now fully briefed and ripe for the Court's review. In their opposition, Plaintiffs write that they "agree that Counts II, III and IV of the First Amended Complaint are moot" and that Count I is moot as to all Plaintiffs other than Gulshan Karimova and the A. Davila Rivero Family. Pls.' Opp'n at 5. Accordingly, as the Court will grant Defendants' Motion to Dismiss as to those claims, with Plaintiffs' consent, the Court addresses below only the procedural history of the applications of Plaintiffs Gulshan Karimova and the A. Davila Rivero Family.

### B.  Visa Application of Plaintiff Karimova and A. Davila Rivero Family

A Form I-140, Petition for Alien Worker, on behalf of Plaintiff Gulshan Karimova was approved on October 2, 2019. Defs.' Mot. at 4. On January 22, 2020, Ms. Karimova appeared for an interview at the U.S. Embassy in Tbilisi, Georgia, and applied for an immigrant visa. *Id.* The consular officer refused her visa application under the Immigration and Nationality Act ("INA")

§ 221(g).  *Id.* at 10.  The Department of State's Consular Electronic Application Center Visa Status Check system for her application displays a message stating that "[a] U.S. consular officer has adjudicated and refused your visa application.… If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete."  *Id.* at 4–5.  Ms. Karimova then followed up with the officer on November 29, 2022, who replied confirming that her application "is pending the completing of administration processing in order to verify qualifications for this visa" and that "[a] decision on this cannot be made until the Consular Section finishes its review."  Pls.' Opp'n Ex. A.

### C.  Visa Application of Plaintiff A. Davila Rivero Family

A Form I-140, Petition for Alien Worker, on behalf of Plaintiff Alvaro Jose Davila Rivero was approved on April 16, 2019.  Defs.' Mot. at 9.  This case includes a derivative spouse and derivative children (collectively, "A. Davila Rivero Family" or "Family").  *Id.*  On October 22, 2019, the U.S. Embassy in Colombia provided the Family's legal counsel "instructions for applying for an immigrant visa interview."  Pls.' Opp'n at 16.  On November 6, 2019, Mr. Davila Rivero was scheduled to appeared for an interview at the U.S. Embassy in Bogota, Colombia and apply for an immigrant visa.  Defs.' Mot. at 9.  All parties agree that Mr. Davila Rivero did not appear and therefore did not execute an immigrant visa application.  *Id.*; Pls.' Opp'n Ex. 3 at 9; Defs.' Reply at 7.  Plaintiffs contend that between November 7, 2019 and February 19, 2020, the Family's counsel "continuously attempted to follow the instructions provided by the Embassy," as described above, "but [was] unable to schedule an immigrant visa interview by following those instructions."  Pls.' Opp'n at 16.  On February 25, 2020, the Embassy sent instructions to pick a tentative date for a new interview, to which the Family's counsel responded with a date in March

2020.  Pls.' Opp'n at 16.  The Embassy responded notifying them that visa appointments were cancelled, *id.*, which was due to the COVID-19 pandemic, Defs.' Reply at 8.  Plaintiffs state that the Family's "counsel never received any further communication from the consulate regarding their visa applications," Pls.' Opp'n at 16, although Defendants state that they were issued a notice in July 2021 that their petition risked termination under INA § 203(g), Defs.' Reply at 8.  On July 11, 2022, the consular section sent Plaintiffs a notice that their petition was terminated under INA § 203(g) because they failed to apply for an immigrant visa for more than one year following notice of its availability and had failed to show, in the year after, that failure to apply for an immigrant visa was for circumstances beyond their control.  *Id.*

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of*

*Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)

(RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.   DISCUSSION

As discussed above, the Court will grant Defendants' Motion to Dismiss Counts II, III, and IV, and Count I as to all Plaintiffs but Gulshan Karimova and the A. Davila Rivero Family, as Plaintiffs consent to their dismissal.  *See* Pls.' Opp'n at 5.  For the reasons set forth below, the Court will also dismiss Count I as to Plaintiffs Karimova and A. Davila Rivero Family on the merits.

The Court finds that the doctrine of consular non-reviewability doctrine does not apply to Plaintiff Karimova, but that her claims nevertheless fail as she has not experienced an unreasonable delay within the meaning of the Administrative Procedure Act ("APA").  The Court therefore grants Defendants' Motion to Dismiss as to Plaintiff Karimova.

As for Plaintiff A. Davila Rivero Family, the Court finds that there is no agency action to be compelled because the Family's registration was terminated and, furthermore, there was no unreasonable delay.  Accordingly, the Court also grants Defendants' Motion to Dismiss as to Plaintiff A. Davila Rivero Family.

Finally, as the Court is granting Defendants' Motion to Dismiss in its entirety, the Court will deny as moot Defendant's motion in so far as they seek summary judgment, as well as their motion to sever in the alternative.

**A. Plaintiff Karimova**

   **i.   Doctrine of Consular Non-Reviewability**

Defendants argue that Plaintiff Karimova's claims fail under the doctrine of consular non-reviewability.  This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  The doctrine of consular non-reviewability derives from "the political nature of visa determinations and… the lack of any statute expressly authorizing judicial review of consular officers' actions."  *Id.*  The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers.  *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials."  *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases).  The United States Court of Appeals for the District of Columbia Circuit recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review."  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  However, courts of this jurisdiction have held that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'"  *Didban v. Pompeo,* 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (CRC) (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388-TSC, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)).  This includes where a visa application remains in administrative processing.  *See, e.g.*, *id.* at 172, 174; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020) (ABJ) (refusing to apply the consular non-reviewability doctrine where the "visa application

remains in administrative processing" where the government actively seeks additional information from the applicant); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (holding that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy v. Dep't of Homeland Sec.*, Civ. A. No. 21-1521 (RDM), 2022 WL 2966333, at *11, *16 (D.D.C. July 27, 2022) (collecting cases and holding the same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Ms. Karimova's visa application as it remains in administrative processing. After filing and having her Form I-140 approved, Ms. Karimova was interviewed at the U.S. Embassy in Tbilisi, Georgia and applied for an immigrant visa. Defs.' Mot. at 4. The consular officer refused her visa application under INA § 221(g); more specifically, the Department of State's Consular Electronic Application Center Visa Status Check system for her application displays a message stating that "[a] U.S. consular officer has adjudicated and refused your visa application.… If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." *Id.* at 4–5. Ms. Karimova then followed up with the officer, who replied confirming that her application "is pending the completing of administration processing in order to verify qualifications for this visa" and that "[a] decision on this cannot be made until the Consular Section finishes its review." Pls.' Opp'n Ex A. As in other cases where courts have deemed the consular non-reviewability doctrine to not apply, Ms. Karimova's application clearly remains in administrative processing per the express language of the consular officials. Defendants acknowledge case law from the United States District Court for the District of Columbia holding that the doctrine does not apply in such circumstances but argue that they "respectfully disagree with these holdings." Defs.' Mot. at 14–

15. The Court finds that Defendants have not offered any persuasive authority or argument to come to that conclusion. Accordingly, the Court holds that the consular non-reviewability doctrine does not bar judicial review of Ms. Karimova's claims.

ii. **Unreasonable Delay**

Defendants argue that even if consular non-reviewability does not foreclose relief, Plaintiffs' mandamus claims fail on the merits. *Id.* at 17. Plaintiffs insist that Defendants have not adjudicated Ms. Karimova's application "within a reasonable time" as required by the Administrative Procedure Act, 5 U.S.C. § 555(b), and that the Court must "compel [that] agency action [as] unlawfully withheld or unreasonably delayed, *id*. § 706(1). Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part… upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Moreover, the D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Id.* (internal citations and quotation marks omitted). Critically here, the Court is bound by clear Circuit precedent that it may not grant relief where an "order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

### 1.  *TRAC* Factors One & Two

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB). Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable. "To the contrary, Congress has given the agencies wide discretion in the area of

immigration processing." *Skalka*, 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed. *See, e.g., Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (CJN) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Simply put, the inquiry begins and ends with Defendants' consistent application of the "first-in, first-out" methodology. Courts of this jurisdiction often look to the length of delay as a rough yardstick to determine whether that rule is, in fact, being applied.

Plaintiff Karimova already had her interview in January 2020 and her visa application was refused; her application now remains in administrative processing. *See* Pls.' Opp'n at 12; Pls.' Opp'n Ex. A. Plaintiffs speculate that that "it is a virtual certainty that Ms. Karimova's application was not processed according to the 'First In First Out' method," Pls.' Opp'n at 12, but their only support is the length of time period between January 2020 and today. Case law is clear that the reasonableness of this period "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Ghadami v. U.S. Dep't of Homeland Security*, Civ. A. No. 19-00397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (ABJ) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). More specifically, delays of over three years have been found to not be unreasonable. *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021

WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Fangfang v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). The Court also acknowledges the impact of the COVID-19 pandemic on this process as responsible for extending time periods of adjudication. *See Xiaobing v. Blinken*, 544 F. Supp. 3d 1, 11–12 (D.D.C. 2021) (TJK) (holding that effects of COVID-19 made delay in visa adjudication reasonable).

Therefore, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiff Karimova's claim, as she has had an interview and her application was refused just over three years ago, which included COVID-19-caused delays—within the time period that numerous other courts have found to be reasonable.

### 2. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami,* 2020 WL 1308376, at *9. Plaintiffs have not alleged any individualized health and welfare concern specific to Ms. Karimova but point to the "intensive fighting involving Azerbaijan, Armenia, and Armenia-supported separatists," explaining that she is "a national and resident of Azerbaijan." Pls.' Opp'n at 14. They also state that "as a woman in Azerbaijan, Ms. Karimova suffers from systemic discrimination." *Id.*

Although the Court is sympathetic to these concerns, it must also be mindful that "many others face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammed v. Blinken*, Civ. A. No. 20-3696, 2021 WL 2866058, at *6 (D.D.C. July 8, 2021) (TNM).  An order compelling Defendants to process Plaintiff Karimova's visa application would merely move her application ahead of other visa petitioners in lieu of other visa applicants who may be facing similar, or even worse, circumstances.  Therefore, as above, the third and fifth *TRAC* factors do not indicate unreasonable delay.

### 3.  *TRAC* Factors Four and Six

Finally, the Court considers the fourth and sixth *TRAC* factors. The fourth factor notes "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  The sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed."  *Ghadami*, 2020 WL 1308376, at *9.  Plaintiff concedes that both factors are neutral at best.  Pls.' Opp'n at 13.

The Court finds that the fourth *TRAC* factor weighs strongly against Plaintiffs.  Granting Ms. Karimova the relief she seeks would merely "reorder a queue of applicants seeking adjudication." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).  The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"–even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *Mashpee Wampanaoag Tribal Council, Inc. v. Norton*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review

in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").  Any such order would plainly interfere with the agency's "unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."  *In re Barr*, 930 F.2d at 76.  Courts in this jurisdiction routinely decline to grant relief that would place one prospective visa applicant ahead of others, *see, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, Civil Action No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020), and, based on similar circumstances, *this* Court has concluded that this *TRAC* factor weighs in favor of Defendants, *see, e.g.*, *Dehghanighanatghestani,* 2022 WL 4379061, at *7; *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor*, No. 21-2126, 2022 WL 1316427, at *5–*6.  The Court will now do the same here.

As for *TRAC* factor six, Plaintiffs do not allege any bad faith on the part of the State Department, *see generally* Am. Compl., and they concede that it is a neutral factor, *see* Pls.' Opp'n at 20.

\*     \*     \*

While Plaintiffs are correct that the doctrine of consular reviewability does not bar judicial review of Ms. Karimova's claims, they have not demonstrated unreasonable delay of her visa application under the *TRAC* factors. Accordingly, the Court will grant Defendants' Motion to Dismiss as to Plaintiff Karimova.

**B.  A. Davila Rivero Family**

    **i.  Termination of Registration**

Defendants argue that because the visa registration of the A. Davila Rivero Family was terminated and their immigrant petition automatically revoked, there is no "delay of any discrete agency action that Defendants were required to take" and therefore Plaintiffs' claim must fail as to the Family.  Defs.' Mot. at 19.  In response, Plaintiffs argue that they "were prevented from [applying for an immigrant visa] by the consulate," and "therefore there is no evidence to support the claim that their visa registration was properly terminated.  Pls.' Opp'n at 17.  As Defendants argue, Plaintiffs' Complaint alleges "that the consulate has unreasonably delayed the adjudication of their requests or visas – it is not a claim that the State Department improperly terminated their registrations," and therefore, "[b]ecause the State Department has terminated the registration – whether rightly or wrongly – there is no longer pending before it any request to adjudicate a visa."  Defs.' Reply at 6–7.  The Court holds that because the A. Davila Rivero Family's registration was in fact terminated, there is no further action for the agency to take and therefore their claim for unreasonable delay fails on the merits.

As explained above, the A. Davila Rivero Family did not appear for their scheduled interview on November 6, 2019 "due to unforeseen personal circumstances," Pls.' Opp'n Ex. 3 at 9, and therefore did not apply for an immigrant visa, Defs.' Mot. at 9; Defs.' Reply at 7. Personal appearance at an interview before a consular officer is required as part of the process and to execute an immigrant visa application.  22 C.F.R. § 42.62.

A consular officer provided the Family's counsel with instructions for scheduling a new interview.  This email warned that "if you do not reschedule your new interview within the period of one year from your first appointment, your case will be closed and your petition will be

cancelled." Pls.' Opp'n Ex. 3 at 7–8. Plaintiffs contend that the Family's counsel attempted to schedule a new appointment over the next few months but that no appointments were available. *Id.* at 4–6. Then in February 2020, the Embassy sent instructions to pick a tentative date for a new interview the following month, to which the Family's counsel responded with a date in March 2020. Pls.' Opp'n at 16; *see also* Pls.' Opp'n Ex. 3 at 3–4. The Embassy responded notifying them that visa appointments were cancelled, *id.* at 2, which was due to the COVID-19 pandemic, Defs.' Reply at 8. A few months later in July 2020, "[a] phased resumption of visa services started… on a post-by-post basis as local conditions and resources allowed." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 (D.D.C. 2021) (TNM) (cleaned up).

Plaintiffs state that they "never received any further communication from the consulate regarding this matter," Pls.' Opp'n at 16, although Defendants claim the Family was issued a notice in July 2021 that their petition risked termination under INA § 203(g), Defs.' Reply at 8. Regardless, there is no evidence that Plaintiffs took affirmative action after this point to schedule an interview.

On July 11, 2022—much longer than one year after the originally scheduled interview in November 2019—the consular section sent Plaintiff A. Davila Rivero Family a notice that their petition was terminated because they failed to apply for an immigrant visa for more than one year and had failed to show, in the year after, that failure to apply for an immigrant visa was for circumstances beyond their control. *See* Defs.' Mot. at 9. The Department of State's Consular Electronic Application Center Visa Status Check system for their case displays a message stating that "your registration for an immigrant visa was cancelled" and that the Family "failed" to "establish that [their] failure to pursue [their] immigrant visa application was due to circumstances beyond [their] control." Defs.' Reply at 6. Upon the facts provided, this is in adherence with the

law, as the Secretary of State is required to "terminate the registration of any [non-citizen] who fails to apply for an immigrant visa within one year following notification to the [non-citizen] of the availability of such visa." 8 U.S.C. § 1153(g); *see also* 8 C.F.R. § 42.83.

With no pending registration or application upon which an agency to act, there can be no unreasonable delay of action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (holding that a mandamus claim can only be maintained when there is a delay of "a discrete agency action that it is required to take"). Therefore, the Court finds that as the Family's registration was terminated, there is no longer any pending request to adjudicate a visa and therefore there can be no claim of unreasonable delay in violation of the APA. The Court could dismiss Plaintiff A. Davila Rivero Family's claims on these grounds alone, but nonetheless continues to conduct further analysis.

### ii.    Unreasonable Delay

Plaintiffs argue that Defendants did not adjudicate the A. Davila Rivero Family's application "within a reasonable time" as required by the APA, 5 U.S.C. § 555(b), and that the Court must "compel [that] agency action [as] unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

The Court incorporates its explanation of the *TRAC* factors stated above.

### 1.    *TRAC* Factors One & Two

Here, the Court finds that *TRAC* factors one and two weigh strongly in favor of Defendants. As explained above, the A. Davila Rivero Family did not appear for their scheduled interview in November 2019 nor did they schedule a new interview, leading to the termination of their registration and automatic revocation of their immigrant petition in July 2022. Defs.' Mot. at 9, 19. Plaintiffs argue that Defendants "prevented" them from applying for an immigrant visa but

present no discrete agency action that Defendants were required to take under these circumstances. *See generally* Pls.' Opp'n at 17. Rather, as the Court found above, the A. Davila Romero Family is not experiencing any delay at all, as there is no action for the Embassy to take.

Plaintiffs also speculate that "there is virtual certainty that the Davila Romeros' applications were not processed according to the 'First In First Out' method," Pls.' Opp'n at 18, but their only support is the length of time period between November 2019 and today, during which time, again, it was Plaintiffs who failed to take necessary actions. Additionally, as discussed in greater detail regarding Plaintiff Karimova, a delay of this length is not necessarily unreasonable. *See, e.g.*, *Pourshakouri v. Pompeo*, 2021 WL 3552199, at *8–9; *Varghese*, 2022 WL 3016741, at *5; *Yavari*, 2019 WL 6720995, at *8. Therefore, the Court finds that *TRAC* factors one and two do not lend credence to Plaintiffs' claim.

### 2. *TRAC* Factors Three & Five

Next, *TRAC* factors three and five also do not lend support to Plaintiffs' claims. Plaintiffs have not alleged any individualized health and welfare concern specific to the A. Davila Romero Family but point to the "incredibly bleak portrait of the state of human rights in Venezuela." Pls.' Opp'n at 19; *see also* Defs.' Reply at 14. Although the Court is sympathetic to their concerns about Venezuela, an order compelling Defendants to process Plaintiffs' visa applications would merely move their applications ahead of other visa petitioners to the front of the queue to the detriment of other visa applicants who may be facing similar (or even more dire) circumstances. Therefore, *TRAC* factors three and five do not counsel a finding of unreasonable delay for the A. Davila Romero Family.

### 3.  *TRAC* Factors Four and Six

Finally, the Court considers the fourth and sixth *TRAC* factors. Plaintiff concedes that both factors are neutral at best.  Pls.' Opp'n at 13.  However, the Court finds that Factor Four weighs strongly against Plaintiffs.  Granting the A. Davila Romero Family the relief they seek would merely "reorder a queue of applicants seeking adjudication," *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C.  2021), as discussed in greater detail above.  As for *TRAC* factor six, Plaintiffs do not allege any bad faith on the part of the State Department.  *See generally* Am. Compl.

Accordingly, neither of these factors support Plaintiffs' claims of unreasonable delay.

\*       \*       \*

Altogether, the Court finds that the A. Davila Romero Family's registration was terminated and there is no agency action to be taken; therefore, their claim of unreasonable delay must fail. Even if the Court were to apply the *TRAC* factors, the Family's claim would still fail.

### IV.    CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendants' [27] Motion to Dismiss and DISMISS Plaintiff's [15] Amended Complaint in its entirety. The Court will DENY AS MOOT Defendants' Motion in so far as Defendants move for summary judgment and to sever Plaintiffs' claims.

An Order will accompany this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge